21 F.3d 989
 64 Fair Empl.Prac.Cas. (BNA) 886,
64 Empl. Prac. Dec. P 43,023, 62 USLW 2656,
18 Employee Benefits Cas. 1001
 H. Brendan JAMES; Shirley B. Anderson; Marion J. Lessey;
Marian L. Munson; Brent W. Olsen; Dean J.
Slater, Plaintiffs-Appellants and Cross-Appellees,
Edwin L. Caulford, Plaintiff,
v.
SEARS, ROEBUCK AND CO., INC., a New York corporation,
Defendant-Appellee and Cross-Appellant.
 Nos. 92-4091, 92-4096.
 United States Court of Appeals,
Tenth Circuit.
 April 11, 1994.
 
 Fred R. Silvester (Claudia F. Berry with him on the briefs), of Suitter Axland Armstrong & Hanson, Salt Lake City, UT, for plaintiffs-appellants and cross-appellees.
 Roger H. Bullock (Robert L. Janicki with him on the briefs) of Strong & Hanni, Salt Lake City, UT, for defendant-appellee and cross-appellant.
 Before BRORBY, McWILLIAMS and EBEL, Circuit Judges.
 BRORBY, Circuit Judge.
 
 
 1
 Six[1] former Sears employees (Plaintiffs) alleged Sears used its buy-out program to force them out of their jobs in violation of the Age Discrimination in Employment Act. The jury returned a verdict in favor of Plaintiffs. Sears appeals alleging there is insufficient evidence to support the verdict. Plaintiffs appeal the amount of damages the jury awarded, the trial court's award of reinstatement instead of front pay, the refusal to award expert witness fees, and the trial court's dismissal of their claim for breach of implied contract. We affirm.
 
 BACKGROUND
 
 2
 The facts before the jury presented either an ill conceived and poorly executed corporate efficiency move or a deliberate corporate attempt to reduce payroll costs by replacing experienced and well paid workers forty years of age or older with lesser experienced and lower paid, younger workers. The jury decided it was the latter and rendered judgment in favor of Plaintiffs.
 
 
 3
 Sears decided to cut costs in its service centers. Sears transferred some of the clerical functions formerly performed at its Ogden, Utah service center to a larger center in Salt Lake City, Utah even though at the time the Ogden center was the more profitable of the two centers. Sears then eliminated the jobs of the two oldest full-time clerical employees of its Ogden service center. One of those terminated service center employees is a plaintiff in this suit. Sears did not allow the service center plaintiff to transfer to the Salt Lake center where her former work had been transferred. Sears then hired predominately younger, part-time employees to work in the Ogden and Salt Lake service centers.
 
 
 4
 Simultaneous with the service center cuts, Sears offered the employees in its Ogden retail store and service center a buy-out. Five of the Plaintiffs worked at the retail store. Under the buy-out, employees leaving Sears' employment would receive a week of severance pay for each year they worked for Sears, with a cap of twenty-six weeks. The purpose of the buy-out was to provide the cut service center employees "comparable jobs" in the retail store. However, the turnover at the Ogden and Salt Lake City service centers was so high the cut service center employees could have been easily reabsorbed within three months.
 
 
 5
 A form of the buy-out called early retirement was offered to employees fifty years of age or older. As offered by Sears, Plaintiffs accepting early retirement lost thirty-five per cent of their accrued pension because they were under sixty-two years of age. Further, plaintiffs between ages fifty and fifty-four had to wait until reaching age fifty-five before their pension payments could begin.
 
 
 6
 Sears pressured Plaintiffs to accept the buy-out/early retirement in order to achieve its predetermined quota for older employees leaving. Sears' internal document shows it planned on thirteen older, full-time employees leaving under the buy-out. There were twenty full-time employees under the age of forty who were eligible for the buy-out. Sears did not plan for any of the eligible younger employees to accept.
 
 
 7
 Sears obtained the acceptances of the five retail store Plaintiffs by conduct that constituted their constructive discharge. Sears' treatment of Plaintiffs included negative job reviews and threatening them with transfers to less desirable and lower paying positions if they did not accept the buy-out/early retirement.
 
 
 8
 Sears' internal document shows that the retail store was not being reorganized and none of the retail employees were to be moved or lose their jobs as a result of the changes in the service centers or the buy-out.
 
 SEARS' APPEAL
 
 9
 On appeal, Sears raises a single issue: insufficiency of evidence. The jury found Sears discriminated against all the Plaintiffs on the basis of age. It found Sears constructively discharged the five retail store Plaintiffs on the basis of age and found the reduction in force termination of the service center Plaintiff was motivated by age discrimination. Sears challenged this verdict, and the trial court denied Sears' motion for judgment notwithstanding the verdict.
 
 
 10
 On appeal, Sears contends the evidence does not support a finding (1) the retail store Plaintiffs were constructively discharged, (2) any of the Plaintiffs were the victims of age discrimination, or (3) the elimination of the service center Plaintiffs' jobs was due to age discrimination instead of reduction in force. Sears also contends it presented a nondiscriminatory business justification for its actions that was not rebutted.
 
 
 11
 In reviewing the denial of Sears' motion for judgment notwithstanding the verdict, "we must view the evidence most favorably to the non-moving party and give that party the benefit of all reasonable inferences to be drawn from the evidence." Spulak v. K Mart Corp., 894 F.2d 1150, 1153 (10th Cir.1990). Error may be found only when the evidence " 'is susceptible to no reasonable inferences sustaining the position of the party against whom the motion is made.' " Id. (quoting Cooper v. Asplundh Tree Expert Co., 836 F.2d 1544, 1547 (10th Cir.1988)).
 
 
 12
 The Age Discrimination in Employment Act ("ADEA") provides it is unlawful for any employer "to fail or refuse to hire or to discharge any individual ... because of such individual's age." 29 U.S.C. Sec. 623(a)(1). The protected class under the ADEA includes individuals "who are at least 40 years of age." 29 U.S.C. Sec. 631(a).
 
 
 13
 Plaintiffs had the burden of establishing age discrimination by a preponderance of the evidence. Faulkner v. Super Valu Stores, Inc., 3 F.3d 1419, 1425 (10th Cir.1993). The often repeated elements of a prima facie case of age discrimination are met when an employee shows "(1) [employee] was within the protected age group, (2) [employee] was doing satisfactory work, (3) [employee] was discharged, and (4) [employee's] position was filled by a younger person." MacDonald v. Eastern Wyoming Mental Health Center, 941 F.2d 1115, 1119 (10th Cir.1991).
 
 
 14
 Once the employee establishes these elements, the employer can offer evidence to show it was motivated by a legitimate nondiscriminatory reason for the challenged action. Faulkner, 3 F.3d at 1425. The employee need not prove the employer's justifications were false, id., or "that age was the sole motivating factor in the employment decision," EEOC v. Prudential Fed. Sav. & Loan Ass'n, 763 F.2d 1166, 1170 (10th Cir.), cert. denied, 474 U.S. 946, 106 S.Ct. 312, 88 L.Ed.2d 289 (1985). Instead, the employee must show age was also a reason for the employer's decision, and "age was the factor that made a difference." Id.; Perrell v. FinanceAmerica Corp., 726 F.2d 654, 656 (10th Cir.1984) (age must "make a difference" in the sense that " 'but for' the factor of age discrimination, the employee would not have been adversely affected" (quoting Cancellier v. Federated Dept. Stores, 672 F.2d 1312, 1316 (9th Cir.), cert. denied, 459 U.S. 859, 103 S.Ct. 131, 74 L.Ed.2d 113 (1982))).
 
 
 15
 After there has been a full trial on the merits, the sequential burden shifting analysis adopted from McDonnell Douglas Corp. v. Green, 411 U.S. 792, 801-04, 93 S.Ct. 1817, 1823-25, 36 L.Ed.2d 668 (1973), "drops out and we are left with the single overarching issue whether plaintiff adduced sufficient evidence to warrant a jury's determination that adverse employment action was taken against him on the basis of age." Fallis v. Kerr-McGee Corp., 944 F.2d 743, 744 (10th Cir.1991).
 
 
 16
 A. Constructive Discharge of Retail Store Employees
 
 
 17
 " '[T]he question on which constructive discharge cases turn is simply whether the employer by its illegal discriminatory acts has made working conditions so difficult that a reasonable person in the employee's position would feel compelled to resign.' " Spulak, 894 F.2d at 1154 (quoting Derr v. Gulf Oil Corp., 796 F.2d 340, 344 (10th Cir.1986)). A finding of constructive discharge must not be based only on the discriminatory act; there must also be aggravating factors that make staying on the job intolerable. Cockrell v. Boise Cascade Corp., 781 F.2d 173, 177 (10th Cir.1986) (perceived demotion or reassignment).
 
 
 18
 A perceived demotion or reassignment to a job with lower status or lower pay may, depending upon the individual facts of the case, constitute aggravating factors that would justify finding of constructive discharge. Id. at 177-78. A "reassignment is not a demotion unless the employee can show that he receives less pay, has less responsibility, or is required to utilize a lesser degree of skill than his previous assignment." Hooks v. Diamond Crystal Specialty Foods, Inc., 997 F.2d 793, 799 (10th Cir.1993) (emphasis added). Thus, a reassignment may involve a demotion if the employee will be paid less in the new position.
 
 
 19
 An offer of early retirement may constitute constructive discharge if the employee demonstrates each choice facing the employee makes him worse off, and "if he refuses the offer and decides to stay, his employer will treat him less favorably than other employees because of age." Mitchell v. Mobil Oil Corp., 896 F.2d 463, 467 (10th Cir.1990).
 
 
 20
 The evidence demonstrated Sears forced the retail Plaintiffs to accept the buy-out or early retirement in several ways. During the months before the offer, two Plaintiffs working as salespersons were singled out among similarly situated employees and pressured about quotas in a way younger employees were not. Although they were top sellers, they were threatened, pressured and systematically "written up" over quotas even though the quotas were almost never met by other salespersons. Sears then used these reviews as a pretext for telling those two salespersons Plaintiffs they would be fired or transferred to lower paying positions if they did not accept.
 
 
 21
 Sears threatened to move the remaining three retail store Plaintiffs from their current jobs into high pressure sales jobs involving unreachable quotas for the sales of maintenance agreements. The three were a salesperson working in an area without quotas for the sale of maintenance agreements, and two clerical employees. At the time, the three were doing a good job in their positions. One of the clerical employees testified a promotion to catalog supervisor was given to a younger employee, even though she herself performed most of the supervisory responsibilities. The other clerical Plaintiff, who was told if she stayed she would be transferred to a high pressure sales position, was at the same time training younger replacements for her current job.
 
 
 22
 At the time they were told they would be transferred to less desirable positions, two of the Plaintiffs sought and were denied newly opened positions for which they were qualified. A person under forty then filled one of those positions on a full-time basis. All of the Plaintiffs offered a choice between transfer and the early retirement/buy-out testified they would make less in the new positions. After the retail store Plaintiffs were terminated, Sears hired predominantly younger, part-time employees in the retail store.
 
 
 23
 All but one of the Plaintiffs were eligible for early retirement but none of them wanted to retire at the time.[2] Under the early retirement option, Plaintiffs were worse off because of the substantial loss in benefits to which they would otherwise be entitled. However, they believed Sears' threats to fire them, or move them into jobs with higher pressure to meet unreachable quotas if they stayed, meant they would be treated less favorably than other employees if they stayed. Thus, they had a choice between two options: lose benefits under early retirement; or continue to work while being harassed or moved to jobs where unreachable quotas could be used as a pretext for firing them. None of the Plaintiffs was offered a choice of continuing work at the same pay or accepting the buy-out or early retirement.
 
 
 24
 Viewing the evidence in the light most favorable to Plaintiffs, the jury heard sufficient evidence to find the treatment meted out to Plaintiffs constituted aggravating circumstances that would cause a reasonable person in their position to feel compelled to accept the buy-out/early retirement and leave. Therefore, the record fully supports the jury's finding of constructive discharge of the retail store Plaintiffs.
 
 
 25
 B. Nondiscriminatory Business Justification in Retail Store
 
 
 26
 Sears contends it was entitled to a judgment notwithstanding the verdict because it showed a nondiscriminatory reason for its actions toward the retail store employees and Plaintiffs failed to rebut these proffered nondiscriminatory reasons.
 
 
 27
 Plaintiffs rebutted Sears' proffered nondiscriminatory business reasons for its actions by showing they were pretextual. As the nondiscriminatory reason for the buy-out, Sears proffers it was necessary to make room for the two eliminated service center employees. This justification was shown to be pretextual because undisputed facts established the cut employees (1) could have easily been reabsorbed and (2) were not allowed to move into the opened jobs in the retail store. As a nondiscriminatory reason for the threatened transfers and the alleged inability to assume Plaintiffs would have jobs at all if they did not accept the buy-out, Sears proffers it could not tell Plaintiffs they could remain in their current positions until after the buy-out when they would know who would stay. This was shown to be pretextual due to the undisputed fact Sears had no plan to reorganize or move a single retail store employee as part of the buy-out. Further, it is shown to be pretextual because Sears told some nontargeted employees they could retain their assignments when they were offered the buy-out.
 
 
 28
 The jury heard sufficient evidence to infer Sears' reasons were pretextual and the real reason for Sears' actions was the Plaintiffs' ages. The jury's findings are supported by the evidence viewed in the light most favorable to the prevailing parties. Accordingly, we affirm its findings of age discrimination and constructive discharge in favor of the retail store Plaintiffs.
 
 
 29
 C. Service Center Employee Reduction in Force
 
 
 30
 Sears contends there is no evidence its reduction in force in the service center was motivated by age.[3] Sears also contends because it established a nondiscriminatory reason for her termination, which was not rebutted, there is insufficient evidence to support the verdict. We review the evidence most favorably to the service center employee and affirm.
 
 
 31
 In Branson v. Price River Coal Co., 853 F.2d 768 (10th Cir.1988), we explained how the elements of a prima facie case differ when a reduction in force is at issue.
 
 
 32
 In reduction-in-force cases, plaintiffs are simply laid off and thus incapable of proving actual replacement by a younger employee. Consequently, courts have modified the fourth prima facie element by requiring the plaintiff to "produc[e] evidence, circumstantial or direct, from which a factfinder might reasonably conclude that the employer intended to discriminate in reaching the decision at issue." This element may be established through circumstantial evidence that the plaintiff was treated less favorably than younger employees during the reduction-in-force.
 
 
 33
 Id. at 771 (quoting Williams v. General Motors Corp., 656 F.2d 120, 129 (5th Cir.1981), cert. denied, 455 U.S. 943, 102 S.Ct. 1439, 71 L.Ed.2d 655 (1982)).
 
 
 34
 The service center Plaintiff presented circumstantial and direct evidence the reduction in force was motivated by age discrimination. Sears cut only the jobs of the two oldest, full-time clerical employees of the center, while it hired part-time, predominantly younger clerical employees shortly afterwards. Similarly, the other service center and the retail store hired predominately younger, part-time clerical employees shortly after the older employee's job was eliminated. The service center Plaintiff could easily have been reabsorbed into one of the service centers within thirty to sixty days, yet she was not reabsorbed. The supposedly transferred tasks were only temporarily transferred from the Ogden service center. When the transferred services returned to the Ogden center, even more predominantly younger part-time employees were hired. The service center Plaintiff, a good, trained and experienced employee, was not offered one of the thirteen jobs in the retail store supposedly opened for her benefit.
 
 
 35
 These facts, together with the natural inference therefrom, are also sufficient evidence for a jury to find Sears' proffered nondiscriminatory justification for the reduction in force was merely pretextual. Viewing the evidence in the light most favorable to the service center Plaintiff, the record fully supports the jury verdict in her favor.
 
 PLAINTIFFS' APPEAL
 
 36
 Plaintiffs argue the trial court erroneously failed to direct a verdict in their favor on damages, failed to award them the costs of their expert witness fees, failed to award front pay instead of reinstatement, and erroneously dismissed their claim for breach of contract. We affirm.
 
 I. Damages
 
 37
 The jury award of damages for lost wages and benefits was for amounts less than the amounts estimated by Plaintiffs' expert witness, even though Sears offered no independent evidence of damages.[4]
 
 
 38
 The trial court denied Plaintiffs' Motion for a Directed Verdict and for a Judgment Notwithstanding the Verdict. In both of these motions, Plaintiffs argued the jury must award damages in the exact amount estimated by their expert because Sears failed to contradict their expert evidence and therefore the jury had no quantifiable basis upon which to reduce their proffered damages. We review the evidence supporting the trial court decision in the light most favorable to Sears as the nonmoving party.
 
 
 39
 A jury must "evaluate the testimony of expert witnesses, just as all other witnesses, and ... reach conclusions as to its worth and weight." Moe v. Avions Marcel Dassault-Brequet Aviation, 727 F.2d 917, 929-30 (10th Cir.), cert. denied, 469 U.S. 853, 105 S.Ct. 176, 83 L.Ed.2d 110 (1984). Thus, there is no rule of law the jury must accept in its entirety the testimony of an expert and give it greater weight than any other evidence.
 
 
 40
 In the case before us, Sears extensively cross-examined Plaintiffs' expert and presented evidence calling into question some of his assumptions. Sears also extensively cross-examined Plaintiffs regarding their employment history, their efforts to find jobs after leaving Sears, and their employment, if any, at the time of trial. The jury was entitled to and did take all of these things into consideration in formulating damages. Thus, the jury heard sufficient evidence to allow them to formulate damages even though Sears did not choose to offer its own expert witness on the subject.
 
 
 41
 Upon a complete review of all the record, we are not convinced the jury made an error in its award of damages. Because the record fully supports the jury's award of damages, it was not error for the trial court to deny the Motion for a Directed Verdict and for a Judgment Notwithstanding the Verdict.
 
 
 42
 II. Plaintiffs' Expert Witness Fees Under ADEA
 
 
 43
 Plaintiffs argue the trial court misinterpreted the law when it refused to add expert witness fees to their attorney's fees and costs of litigation awarded under the ADEA. The trial court's legal analysis, which provides the basis for the denial of expert witness fees, is reviewable de novo. Aguinaga v. United Food & Commercial Workers Int'l, 993 F.2d 1480, 1481 (10th Cir.1993).
 
 
 44
 There must be an explicit statutory authorization before expert witness fees will be awarded. West Virginia Hosps., Inc. v. Casey, 499 U.S. 83, 86, 111 S.Ct. 1138, 1140-41, 113 L.Ed.2d 68 (1991) (finding no authorization for expert fees in the Civil Rights Act);[5] Crawford Fitting Co. v. J.T. Gibbons, Inc., 482 U.S. 437, 455, 107 S.Ct. 2494, 2506, 96 L.Ed.2d 385 (1987) (finding no authorization in 28 U.S.C. Secs. 1920, 1821(b) for the award of expert witness fees in an antitrust case). The ADEA enforces a private cause of action for age discrimination in employment in accordance with certain provisions of the Fair Labor Standards Act.[6] 29 U.S.C. Sec. 626(b). The Fair Labor Standards Act provides, "[t]he court in [an ADEA] action shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action." 29 U.S.C. Sec. 216(b).
 
 
 45
 This court has recently held expert witness fees incurred by plaintiffs in an ADEA case could not be recovered as part of a reasonable attorney's fee and costs. Gray v. Phillips Petroleum Co., 971 F.2d 591 (10th Cir.1992). In Gray, we carefully examined Sec. 216(b) of the Fair Labor Standards Act, as made applicable to the ADEA.
 
 
 46
 [Section 626(b) ] does not provide "explicit statutory authority" to award expert witness fees to Plaintiffs. The statute provides solely for the shifting of a "reasonable attorney's fee ... and costs of the action." Casey tells us that a "reasonable attorney's fee" does not include an expert witness fee. Moreover, "costs of the action" are specifically defined in 28 U.S.C. Sec. 1920, and do not include expert witness fees unless the expert is appointed by the court. 28 U.S.C. 1920(b).
 
 
 47
 971 F.2d at 594-95 (citation omitted).
 
 
 48
 Despite this controlling precedent, Plaintiffs contend because Congress amended the Civil Rights Act in 1991 to create explicit statutory authority for expert witness fees as a component of attorney's fees recoverable under Sec. 1988 of the Act we must also allow such fees under the ADEA.[7] However, in Gray, we have already considered and rejected this proposition. Gray, 971 F.2d at 597 n. 10 ("The amendment [to the Civil Rights Act] does not directly affect this case as Plaintiffs were awarded expert witness fees under 29 U.S.C. Secs. 216(b), 626(b), not 42 U.S.C. Sec. 1988.").
 
 
 49
 Congress chose to make parts of the ADEA enforceable in accordance with the specified provisions of the Fair Labor Standards Act, not in accordance with Title VII of the Civil Rights Act. Therefore, Congress' amendment of Title VII in the 1991 Civil Rights Act has no effect on the relationship between the ADEA and the Fair Labor Standards Act. As a matter of law, expert witness fees are not available as part of attorney's fees and costs recoverable under the ADEA. Therefore, we affirm the trial court's refusal to award such fees.
 
 III. Reinstatement Versus Front Pay
 
 50
 The trial court ordered Sears to reinstate the plaintiffs who had not yet reached retirement age at "a salary and benefit package commensurate with the compensation that they would have received if they had remained employed at Sears." After the trial, the plaintiffs filed a Motion for Clarification of the order concerning reinstatement. The trial court held a hearing on the matter, considered the opposing affidavits regarding the initial contacts for reinstatement, and concluded reinstatement was nonetheless the appropriate remedy. In so doing, the trial court told the parties it was going to retain jurisdiction in order to make sure Plaintiffs were treated as fairly as if they had not left, even if it required further hearings on the issue. Plaintiffs notified Sears they declined reinstatement. Accordingly, the trial court signed an order relieving Sears from further interim pay and reinstatement.
 
 
 51
 Plaintiffs contend the trial court erred by ordering reinstatement instead of front pay. Plaintiffs contend the reinstatement offered by Sears was for inferior positions and pay and was unworkable due to allegations of hostility, harassment, or retaliation.
 
 
 52
 Reinstatement and front pay are mutually exclusive remedies under the ADEA for the same injury. Anderson v. Phillips Petroleum Co., 861 F.2d 631, 637 (10th Cir.1988). Front pay refers to the award of money as compensation for the future loss of earnings. Hansard v. Pepsi-Cola Metropolitan Bottling Co., 865 F.2d 1461, 1469 (5th Cir.), cert. denied, 493 U.S. 842, 110 S.Ct. 129, 107 L.Ed.2d 89 (1989). "Reinstatement is the preferred remedy under the ADEA and should be ordered whenever it is appropriate. Reinstatement may not be appropriate, however, when the employer has exhibited such extreme hostility that, as a practical matter, a productive and amicable working relationship would be impossible." Prudential Fed., 763 F.2d at 1172 (citations omitted). See also Spulak, 894 F.2d at 1157-58 (no error to award front pay after finding employer's hostility and employer's implied accusations of plaintiff's dishonesty to other employees rendered productive and amicable working relationship impossible).
 
 
 53
 The decision to award front pay or to order reinstatement as the appropriate remedy in an ADEA case is a matter for the discretion for the trial court. Denison v. Swaco Geolograph Co., 941 F.2d 1416, 1426-27 (10th Cir.1991). We review that decision under an abuse of discretion standard.
 
 
 54
 Plaintiffs contend they were justified in refusing the offered reinstatement because Sears offered them jobs with less pay and benefits than they were receiving when they left. However, Sears was under no obligation to offer such jobs. Instead, the trial court ordered Sears to offer Plaintiffs jobs with pay and benefits as if they had not left. The trial court did not abuse its discretion in ordering reinstatement because the record contains evidence Sears' reinstatement offers to Plaintiffs did comply with the order and were bona fide offers even though made orally.
 
 
 55
 Plaintiffs failed to show reinstatement was unworkable due to hostility, harassment, or retaliation. Plaintiffs' affidavits showed the following: (1) a personnel manager shouted at one Plaintiff when she attempted to bring along another Plaintiff as a witness to her meeting to arrange reinstatement; (2) one Plaintiff would have to work under a supervisor who testified at trial she was satisfied with her own treatment by Sears during and after the buy-out; and (3) Sears did not put its reinstatement offers to two Plaintiffs in writing. An initial rocky interview and some uncertainty about the terms of another offer of reinstatement do not establish hostility, harassment or retaliation that would make reinstatement unworkable. Similarly, the testimony of a future supervisor as to the supervisor's own treatment by Sears does not show hostility that would make reinstatement unworkable.
 
 
 56
 The injury Plaintiffs suffered was the loss of their jobs. The remedy of the trial court exactly redressed that injury--damages for the time the jobs were lost plus a return to jobs at a salary and benefit level as if they had stayed. Having deliberately chosen not to accept the awarded remedy, despite the trial court's assurances that compliance would be enforced, the Plaintiffs are not entitled to be compensated for future loss of earnings from jobs they decided not to accept. We affirm the trial court's decision to order reinstatement instead of front pay.
 
 IV. Breach of Contract
 
 57
 The trial court found employment at Sears was expressly at-will as evidenced by clear and conspicuous statements in Plaintiffs' original employment applications and in the Sears employee booklet given to all employees. On summary judgment, the trial court dismissed Plaintiffs' claims for breach of alleged terms of an implied-in-fact employment contract created by the terms of the buy-out offer or parts of the Personnel Policies Manual.
 
 
 58
 Plaintiffs contend the trial court erred because the written portion of the terms of the buy-out offer or certain parts of the Personnel Policies Manual created an implied contract to only terminate in accordance with certain other procedures and policies, thereby contradicting the written terms of the at-will employment. "We review the grant or denial of summary judgment de novo. We apply the same legal standard used by the district court under Fed.R.Civ.P. 56(c)." Applied Genetics Int'l, Inc. v. First Affiliated Sec., Inc., 912 F.2d 1238, 1241 (10th Cir.1990) (citations omitted).
 
 
 59
 Although the "existence of an implied-in-fact contract is a factual question committed to the sound discretion of the jury.... [T]he court retains the power to decide whether, as a matter of law, a reasonable jury could find that an implied contract exists." Sanderson v. First Security Leasing Co., 844 P.2d 303, 306 (Utah 1992). Unless the terms of an employee manual are ambiguous, the construction of the terms of the contract of employment is a matter of law to be decided by the court. Brehany v. Nordstrom, Inc., 812 P.2d 49, 56 (Utah 1991).
 
 
 60
 Under Utah employment law, it is well settled an "implied-in-fact promise cannot, of course, contradict a written contract term." Berube v. Fashion Centre, Ltd., 771 P.2d 1033, 1044 (Utah 1989). In a recent case, the Utah Supreme Court held where an employee manual contains a disclaimer that makes it clear employment is at-will and expressly reserves the right to terminate at any time, without cause, the employee manual effectively preserves the at-will employment. Johnson v. Morton Thiokol, Inc., 818 P.2d 997, 1003 (Utah 1991). Therefore, in light of the clear language of the disclaimer, the Utah Supreme Court held there was no triable issue for a jury on whether other policies and procedures created an implied contract to only terminate for good cause. Id. at 1003-04.
 
 
 61
 In the present case, the trial court found the terms of the employee manual were not ambiguous and none of the documents purported to limit Sears' right to discharge employees at will. Because these findings are supported by the evidence, they are not clearly erroneous. Where the terms of the employee manual were not ambiguous, and where the disclaimer made it clear employment was at-will, and where none of the proffered documents purport to limit the at-will employment, there was no reason to send the issue to the jury. We conclude, as did the trial court, that Sears was entitled to partial summary judgment dismissing the Plaintiffs' cause of action for breach of an alleged implied-in-fact contract. Accordingly, we affirm.
 
 CONCLUSION
 
 62
 The record viewed in the light most favorable to Plaintiffs as prevailing parties supports the jury verdict. The record supports the amount of the award of back pay. The trial court did not err by ordering Plaintiffs to be reinstated instead of awarding front pay. We find no error in the trial court's refusal to award expert witness fees or in its dismissal of the claim for breach of implied contract.
 
 
 63
 AFFIRMED.
 
 
 
 [1]
 Plaintiff Edwin Caulford has settled with Sears and is no longer party to this appeal
 
 
 [2]
 As offered by Sears, early retirement was not an attractive alternative to working because retirement benefits were so low. For example, after nineteen years, one employee was entitled to $90 a month, and after twenty-eight years another employee was entitled to $57 a month
 
 
 [3]
 Only one of the two employees cut from the service center is a Plaintiff in this action
 
 
 [4]
 Plaintiffs' expert testified their individual damages ranged from $85,693 to $203,722. The jury's award of damages to each Plaintiff varied from $54,074 to $84,728. The jury awarded the highest percentage of claimed damages to the plaintiff who went so far in mitigation as to work two jobs for a period of time. It awarded the lowest percentage of claimed damages to the plaintiff who testified part of the reason she had not worked since leaving Sears was her family situation, including the recent death of her husband
 
 
 [5]
 Congress subsequently amended the Civil Rights Act to remedy the lack of authorization under the act. See infra n. 6
 
 
 [6]
 Fair Labor Standards Act of 1938 (FLSA), ch. 676, 52 Stat. 1060 (codified as amended at 29 U.S.C. Secs. 201-219)
 
 
 [7]
 See Civil Rights Act of 1991, Pub.L. No. 102-166, Sec. 113, 105 Stat. 1071, 1079 (codified at 42 U.S.C. Sec. 1988(c))