**Karen L. MAYO, Plaintiff,**

v.

**DILLARD'S DEPARTMENT STORES, INC., Defendant.**

No. 94–4025–SAC.

United States District Court, D. Kansas.

March 22, 1995.

Kirk W. Lowry, Palmer & Lowry, Topeka, KS, for plaintiff Karen L. Mayo.

Jack L. Whitacre, Spencer, Fane, Britt & Browne, Kansas City, MO, Nancy M. Landis, Spencer, Fane, Britt & Browne, Overland Park, KS, for defendant Dillard's Dept. Stores, Inc.

## MEMORANDUM AND ORDER

CROW, District Judge.

This is an employment discrimination case in which the plaintiff alleges she was terminated because of her age. The plaintiff, Karen Mayo, worked for approximately three years as a sales associate at the defendant, Dillard's Department Store ("Dillard's"), located in the Westridge Mall, Topeka, Kansas. Dillard's fired Mayo in September of 1993 and told her the reason for discharge was her failure to meet the minimum sales-per-hour quotas or standards for her workcenter. The defendant moves for summary judgment arguing the plaintiff is unable to prove that

her work was satisfactory for purposes of the prima facie case and, alternatively, is unable to rebut the defendant's articulated reasons for discharging her. The plaintiff insists her circumstantial evidence is enough for a reasonable jury to return a verdict in her favor.

## Summary Judgment Standards

A court grants a motion for summary judgment under Rule 56 of the Federal Rules of Civil Procedure if a genuine issue of material fact does not exist and if the movant is entitled to judgment as a matter of law. The court is to determine "whether there is the need for a trial—whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). The initial burden is with the movant to "point to those portions of the record that demonstrate an absence of a genuine issue of material fact given the relevant substantive law." *Thomas v. Wichita Coca–Cola Bottling Co.,* 968 F.2d 1022, 1024 (10th Cir.), *cert. denied,* —— U.S. ——, 113 S.Ct. 635, 121 L.Ed.2d 566 (1992). If this burden is met, the non-moving party must "come forward with specific facts showing that there is a genuine issue for trial as to elements essential to the non-moving party's case." *Martin v. Nannie and Newborns, Inc.,* 3 F.3d 1410, 1414 (10th Cir.1993) (citations omitted). The court views the evidence and draws any possible inferences in the light most favorable to the non-moving party. *MacDonald v. Eastern Wyoming Mental Health Center,* 941 F.2d 1115, 1117 (10th Cir.1991). A summary judgment motion does not empower a court to act as the jury and determine witness credibility, weigh the evidence, or choose between competing inferences. *Windon Third Oil and Gas v. Federal Deposit Ins.,* 805 F.2d 342, 346 (10th Cir.1986), *cert. denied,* 480 U.S. 947, 107 S.Ct. 1605, 94 L.Ed.2d 791 (1987).

For purposes of this motion, the court considers the following facts to be uncontroverted.

1. In September of 1990, Dillards hired Karen Mayo as a sales associate in the menswear department. She was 53 years of age when hired.

2. Prior to September of 1992, Karen Mayo's job performance reviews were satisfactory or good. These reviews evaluated more than Mayo's sales per hour. The same reviews show, however, that Mayo's sales per hour occasionally exceeded her department's standards.

3. In April of 1992, Dillards began a new sales-per-hour program. Dillards instructed and trained its employees, including the plaintiff, on the new program. The program included setting for each sales associate an individual sales-per-hour standard which the associate would have to meet. The standards were individually calculated for each associate based on the associate's rate of pay, the store, the associate's workcenter, and the workcenter's selling cost. Specifically, the standard is calculated from dividing the associate's hourly pay rate by the associate's workcenter's selling cost goal with adjustments for seasonal variations. The associates also were given a "raise goal" which was the sales per hour needed to earn a raise. For existing associates, this goal was the individual sales-per-hour standard plus ten percent.

4. The new program required an associate to average his sales-per-hour standard for each review period. If the associate did not average the individual sales standard for a review period, then he or she was subject to a pay reduction or discharge. For existing associates, the review period was every six months.

5. The area sales manager posted the individual sales-per-hour standard and the daily, monthly and cumulative sales for each associate. Consequently, Karen Mayo knew at all times her standard and actual sales-per-hour totals. She also knew and understood she was subject to a pay reduction or discharge for falling short of her individual sales-per-hour standard.

6. When the new program started, the defendant set Mayo's sales standard at $108 per hour based on her workcenter in the menswear department. Her rate of pay for that period was $6.50 per hour. This stan-

dard governed the review period of April of 1992 through August of 1992.

7. When Mayo was reviewed in September of 1992, her actual sales were $103 per hour or $5 under her standard. Dillard's reduced Mayo's pay to $6.18 per hour, lowered her sales standard for the next period to $103 per hour for her workcenter in the menswear department, and warned her in writing that a pay reduction or dismissal could result from not meeting her individual sales-per-hour standard.

8. In its annual review of Mayo's performance in September of 1992, Dillard's gave Mayo a marginal rating for overall performance and commented on her substandard sales per hour. Mayo understood she received the marginal rating because she had not met her sales standard. Mayo further recognized the need to improve her actual sales.

9. The defendant transferred Mayo to the ladieswear department in November of 1992.

10. Mayo's next sales-per-hour review was in March of 1993, covering the period from September of 1992 through February of 1993. Her actual sales were $97 per hour or $6 under her standard. Mayo again received a written warning that her sales were substandard. This warning informed Mayo that she would be terminated if she did not meet her sales standard over the next review period.[1] The defendant lowered Mayo's pay to $6.00 per hour and also lowered her sales standard to $100 per hour. This rate of pay and sales standard were the minimums set for the workcenter to which Mayo was assigned. Consequently, Mayo's pay or sales standard could not be reduced any further

and her failure to meet the sales standard would mean termination.

11. Between March of 1993 and August 1993, Mayo received monthly updates about her actual sales performance. Mayo already knew her actual sales as the cumulative sales were posted in the area sales manager's office. Mayo did not meet this minimum sales standard for any of the months of March through August of 1993.

12. In late August of 1993, Mayo asked the store manager, Clem Sheridan, for a transfer to the menswear department. According to Mayo, Sheridan's response was that she should "not worry about it" and that he would get back with her.[2] Mayo admits that Sheridan did not say he would transfer her.

13. Sheridan avers that store policy precludes an inter-department transfer of a sales associate whose sales performance has fallen to the minimum standards for his or her current workcenter.

14. On September 24, 1993, Sheridan fired Mayo and documented the firing as caused by Mayo's failure to meet her sales-per-hour standards.

15. Mayo testified that she believes she was terminated due to her age because she was replaced by a woman who was only twenty-five years old. Another reason given by Mayo for "feeling" that she was discriminated against was that area sales managers would call down to check if she had finished unpacking freight and ordering markdowns. Mayo explained that she "couldn't do it as fast sometimes as maybe someone younger...." (Mayo Dep. at 132). Mayo, however, later admitted that all associates were under the same pressure to complete the

1. The plaintiff says this fact is controverted by Clem Sheridan's assurance of "not to worry." The citations of record do not show that Clem Sheridan's statement was made at the same time or shortly after this written warning. Nothing in the record suggests that Sheridan's statement was in reference to this written warning. Moreover, the plaintiff's brief does not contain pages 122 and 123 to Exhibit A. The uncontroverted evidence of record shows that Mayo signed the written "Documentation of Disciplinary Action" which warned that Dillard's would terminate her if she did not meet her lowered sales standard of $100.

2. The plaintiff says she interpreted Sheridan's statement as meaning "not to worry" about her sales standard. The plaintiff cites page 122 of exhibit A and exhibit D in support of her position. The plaintiff, however, fails to attach page 122 of exhibit A or exhibit D to her brief. For this reason, the court has no choice but to reject the plaintiff's argued interpretation and to treat the defendant's related statements as uncontroverted.

markdowns and unpack freight and that she was not treated differently because of her age. Mayo further conceded that she did not know whether other sales associates also received calls from area sales managers for the same reason. When asked during her deposition if there were any other reason for her belief that she was terminated because of her age, Mayo referred to an incident in January of 1991 when an area sales manager criticized her handwriting. In response to the defendant's motion, the plaintiff concedes that the area sales manager's comment about the handwriting was not based on age.

16. When asked if she thought her work was satisfactory, Mayo testified:

> I know my work is satisfactory because I gave it as much as I could. I tried to make my sales per hour quota. I called customers, I sent "thank you" notes. I tried to unpack all the merchandise and go by all their rules and regulations.

(Mayo Dep. at 164). When asked to explain again why she thought her work was satisfactory even though she had not met her sales standards for the last year, Mayo testified:

> Because I don't think they should have just based it on their sales per hour quota. I think they should have based it on other things.

(Mayo. Dep. at 164). Mayo identified these "other things" to include getting along with co-workers, making an honest effort to perform, and doing other assigned tasks.

17. Mayo was asked what the defendant should have done instead of discharging her for not meeting the sales standard. Mayo believed the defendant should have given her another three months, a fourth warning, or a transfer to the mens department. Mayo admitted the defendant had no reason to think that her performance would have improved with a transfer or more time.

█ Summary judgments are "used sparingly in employment discrimination cases." *Hardin v. Hussmann Corp.*, 45 F.3d 262, 264 (8th Cir.1995). This is because discrimination claims often turn on the employer's intent, *McCoy v. WGN Continental Broadcasting Co.*, 957 F.2d 368, 370–71 (7th Cir.1992), and courts ordinarily consider summary judgment inappropriate to settle an issue like intent, *Cone v. Longmont United Hosp. Ass'n*, 14 F.3d 526, 530 (10th Cir.1994). Even so, summary judgment is not "per se improper," *Washington v. Lake County, Ill.*, 969 F.2d 250, 253 (7th Cir.1992), and may be useful in weeding out claims and cases obviously lacking merit, *Summers v. State Farm Mut. Auto. Ins. Co.*, 864 F.2d 700, 709 (10th Cir.1988), *overruled on other grounds*, *McKennon v. Nashville Banner Pub. Co.*, — U.S. ——, 115 S.Ct. 879, 130 L.Ed.2d 852 (1995). For example, when the plaintiff's evidence fails to create any reasonable doubts about the employer's expressed lawful motive for taking the adverse employment action, summary judgment is proper. *Cone*, 14 F.3d at 530.

█ The Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 *et seq.*, makes it unlawful for an employer, *inter alia*, "to discharge any individual ... because of such individual's age." 29 U.S.C. § 623(a)(1). The protected class under the ADEA are individuals "who are at least 40 years of age." 29 U.S.C. § 631(a). To prevail on her disparate treatment claim, Mayo "must prove by a preponderance of the evidence that ... [Dillard's] had a discriminatory motive or intent." *Ortega v. Safeway Stores, Inc.*, 943 F.2d 1230, 1236 (10th Cir.1991). Though she need not prove that age discrimination was Dillard's sole motivation, Mayo must show it was the factor which made the difference, that is, Dillard's would not have discharged her but for the age discrimination. *James v. Sears, Roebuck and Co., Inc.*, 21 F.3d 989, 992 (10th Cir.1994).

█ "The framework for assessing the evidence in an age discrimination case parallels that applicable in a Title VII case." *Spulak v. K Mart Corp.*, 894 F.2d 1150, 1153 (10th Cir.1990). Where no direct evidence of discrimination exists, the plaintiff must prove a prima facie case. *Cone v. Longmont United Hosp. Ass'n*, 14 F.3d at 529. Mayo must show that: (1) she was within the protected age group, (2) she was doing satisfactory work, (3) she was discharged, and (4) she was replaced by a younger person. *James v. Sears, Roebuck and Co., Inc.*, 21 F.3d at 992; *MacDonald v. Eastern Wyoming Mental*

*Health Center,* 941 F.2d at 1119. Proof of a prima facie case creates "'a rebuttable presumption of discriminatory intent.'" *Ingels v. Thiokol Corp.,* 42 F.3d 616, 621 (10th Cir.1994) (quoting *Branson v. Price River Coal Co.,* 853 F.2d 768, 771 (10th Cir.1988)). Of the four elements, the only one at issue here is whether Mayo's performance was satisfactory.

■ If Mayo succeeds in proving these elements, it then becomes Dillard's burden to produce a legitimate, nondiscriminatory reason for the plaintiff's discharge. *Cone,* 14 F.3d at 529. "[T]he defendant does not at this stage of the proceedings need to litigate the merits of the reasoning, nor does it need to prove that the reason relied upon was bona fide, nor does it need to prove that the reasoning was applied in a nondiscriminatory fashion." *E.E.O.C. v. Flasher Co., Inc.,* 986 F.2d 1312, 1316 (10th Cir.1992) (citations omitted). Dillard's reason for discharge, however, "must be reasonably specific and clear." *Id.* Dillard's reason for discharging Mayo is that she simply failed to meet her sales standard. This reason is legitimate and nondiscriminatory and is reasonably specific and clear.

■ Once Dillard's produces a legitimate nondiscriminatory reason for discharging Mayo, then the presumption of discrimination created by the prima facie case "'simply drops out of the picture.'" *Ingels,* 42 F.3d at 621 (quoting *St. Mary's Honor Center v. Hicks,* —— U.S. ——, ——, 113 S.Ct. 2742, 2749, 125 L.Ed.2d 407 (1993)). At this stage, the burden of persuasion falls back on Mayo to show that her age was a determinative factor in Dillard's discharge decision or that Dillard's articulated reason is a mere pretext. *Cone,* 14 F.3d at 529. Pretext is shown by proving either "'that a discriminatory reason more likely motivated the employer or ... that the employer's proffered explanation is unworthy of credence.'" *Rea v. Martin Marietta Corp.,* 29 F.3d 1450, 1455 (10th Cir.1994) (quoting *Texas Dept. of Community Affairs v. Burdine,* 450 U.S. 248, 256, 101 S.Ct. 1089, 1095, 67 L.Ed.2d 207 (1981)). To avoid summary judgment at this point in the analysis, Mayo must assert specific facts establishing a triable issue as to whether Dillard's reason for discharging her is a cover-up for age discrimination. *Rea,* 29 F.3d at 1455. "If no facts relating to the pretextuality of the defendant's action remain in dispute, summary judgment is appropriate." *Hooks v. Diamond Crystal Specialty Foods, Inc.,* 997 F.2d 793, 798 (10th Cir.1993).

### Prima Facie Case

According to Dillard's, Mayo is unable to prove her work was satisfactory for purposes of the prima facie case. Dillard's couches its argument on Mayo's deposition testimony that she knew and understood the new program imposing sales-per-hour standards for associates and the consequences under the program if an associate's actual sales dropped below the sales standards. Mayo admitted that she did not meet those standards for each of the review periods following the program's inception. Dillard's emphasizes that Mayo even failed to achieve during her last review period the minimum standards applicable for her workcenter. On these facts, Dillard's contends the plaintiff is unable to prove her performance was satisfactory.

The Tenth Circuit has held, as Mayo correctly argues, that an employer's proffered reasons for taking an adverse action are not to be considered in assessing the sufficiency of the plaintiff's prima facie case. *Kenworthy v. Conoco, Inc.,* 979 F.2d 1462, 1470 (10th Cir.1992); *MacDonald,* 941 F.2d at 1120. Guided by the accepted notion that a prima facie case was not intended to be onerous or ritualistic, the Tenth Circuit in *MacDonald* concluded that:

> a plaintiff may make out a prima facie case of discrimination in a discharge case by credible evidence that she continued to possess the objective qualifications she held when she was hired, ..., or by her own testimony that her work was satisfactory, even when disputed by her employer, ..., or by evidence that she had held her position for a significant period of time,....

941 F.2d at 1121. Relying on this authority, Mayo maintains the satisfactory performance prong to her prima facie evidence is estab-

lished by her testimony that she performed satisfactorily and by the fact she still possessed the same objective qualifications on which she was hired.

Unlike the Tenth Circuit precedent cited by her, Mayo here admits that her sales performance fell below Dillard's minimum standards for her workcenter and that her deficient sales performance was objectively measured. Still, Mayo's substandard sales is Dillard's same proffered reason for discharging her. By making actual sales performance part of Mayo's prima facie case, distinct evidentiary steps—her burden to show a prima facie case, Dillard's burden to produce a legitimate reason for discharge, and her ultimate burden of persuasion—unnecessarily collapse into a single step. *Denison v. Swaco Geolograph Co.*, 941 F.2d 1416, 1421 (10th Cir.1991). The consequence of this is serious. Specifically, Mayo would be unable to prove a prima facie case of age discrimination unless she demonstrated that her actual sales met Dillard's established standards. If unable to prove a prima facie case, Mayo would lose the opportunity to prove that Dillard's may have acted on a discriminatory motive in adopting or enforcing the program as revealed in the disparate effect, application, and use of the program. In short, to elevate an employer's reason for adverse action to a prima facie element ostensibly affords it preclusive effect and shields it from a pretextual attack. Perhaps, the most important reason for rejecting the defendant's approach is its inconsonance with the Tenth Circuit's clear statement in *Denison:* " 'If an employer is dissatisfied with the performance of an employee, he can properly raise the issue in rebuttal of the plaintiff's showing.' " 941 F.2d at 1421 (quoting *Powell v. Syracuse University*, 580 F.2d 1150, 1155 (2nd Cir.), *cert. denied*, 439 U.S. 984, 99 S.Ct. 576, 58 L.Ed.2d 656 (1978)).

 The court finds that Mayo made a prima facie showing of the second element to her case. When she was fired, Mayo still possessed the same objective qualifications on which she was hired. Her performance reviews in 1990, 1991 and 1992 were generally good. In 1991, her sales output earned her a position on the Top 20 sales list at Dillard's. In addition, Mayo's own assessment supports a finding that she was qualified and that she continued to perform at an acceptable level.

## Pretext

 Mayo, however, has failed to produce any evidence that age was a determinative factor in Dillard's discharge decision or that the Dillard's articulated reason for discharging her is a mere pretext. Over the one and one-half year period that the sales-per-hour program was in effect prior to her discharge, Mayo never once met her sales standard for a review period. After the first two review periods, Dillard's explicitly warned Mayo about the consequences of her substandard sales performance and then lowered her sales standard. For her last review period, Mayo's sales standard was at the lowest possible level for her workcenter. When she even fell short of that standard, Mayo was terminated as she had been warned.

The plaintiff does not argue nor does the evidence of record suggest that Dillard's sales program discriminates against older sales associates. That it happens to adversely affect the plaintiff is not enough for an age discrimination claim. Mayo admits to having understood the program, its expectations of her, and the consequences of not meeting them. That the program was harsh or even unfair is not the issue. "The ADEA is not a vehicle for reviewing the propriety of business decisions." *Faulkner v. Super Valu Stores, Inc.*, 3 F.3d 1419, 1426 (10th Cir.1993) (citation omitted). Put another way, a court "will not second guess business decisions made by employers, in the absence of some evidence of impermissible motives." *Lucas v. Dover Corp., Norris Div.*, 857 F.2d 1397, 1404 (10th Cir.1988). Mayo's disagreement with Dillard's use of disciplinary actions to enforce its new sales program goes to the propriety of Dillard's business decisions and is irrelevant to Mayo's allegations of age discrimination.

The plaintiff points to nothing in Dillard's use of the sales program that suggests age discrimination. A reasonable jury could not draw any inference of age discrimination in

Clem Sheridan's decision to terminate Mayo after he had told her "not to worry." Whatever Sheridan may have said, assured or promised to Mayo, the simple fact that Sheridan may not have abided by his words is not evidence of age discrimination. The plaintiff's discrimination claim is not saved by Sheridan's mere words of assurance to her.

The court finds nothing in Dillard's promotion of Tamara Vincent to indicate age discrimination. Mayo overlooks the fact that Vincent is also within the ADEA's protected age class. That Vincent received a written warning for substandard sales prior to her promotion does not necessarily show a disparate enforcement of Dillard's sales program. Sheridan explains that Vincent actually met her sales standard for the second review period. Based on this explanation, there is no basis for drawing any inference of a discriminatory motive behind this single instance of differential treatment. The Tenth Circuit recently cautioned that "[t]he law does not require, nor could it ever realistically require, employers to treat all of their employees all of the time in all matters with absolute, antiseptic, hindsight equality." *E.E.O.C. v. Flasher Co.*, 986 F.2d at 1319.

The plaintiff offers evidence that three associates in the ladieswear department were fired under the new sales program, and all three were within the ADEA's protected age class. The plaintiff's statistics are inadequate for a reasonable factfinder to draw any reliable inferences from them. The statistics cover only employees who worked in the ladieswear department during the limited period the plaintiff was employed in that department. This small statistical pool included twenty-three sales associates, and eleven of the twenty-three were under the age of forty. Of these eleven younger associates, nine quit before they were ever reviewed, one quit after a positive review, and the other associate met her sales standard every review period. Of those associates over forty years of age, five associates twice failed to meet their sales standards and received written warnings for their inadequate sales. Three of the five were terminated upon their third substandard sales performance. The other two improved their sales, met their standards, and were not terminated. One of the two associates who were not terminated is over ten years older than the plaintiff. In short, the employment records of those twenty-three associates do not reveal any discriminatory enforcement of Dillard's sales program.

Even though summary judgment procedures require all doubts to be resolved in Mayo's favor, her allegations alone will not defeat summary judgment. *Cone*, 14 F.3d at 530. The plaintiff fails to produce enough evidence to raise a genuine factual issue regarding the authenticity of Dillard's stated motive. Mayo proffers her speculation and feelings that age was the underlying reason for Dillard's decision to fire her and that Dillard's reliance on her substandard sales is a pretext. This, however, is an insufficient basis for denying Dillard's summary judgment motion. *See Branson v. Price River Coal Co.*, 853 F.2d at 772. The court concludes that "the record taken as a whole could not lead a rational trier of fact to find" for Mayo on her age discrimination claim. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986).

IT IS THEREFORE ORDERED that the defendant's motion for summary judgment (Dk. 29) is granted.