**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
—————————————————

AARON L. SAMPSON,

    Plaintiff - Appellant,

v.

KANE IS ABLE, INC.,

    Defendant - Appellee.

No. 19-4095
(D.C. No. 2:17-CV-00947-DN)
(D. Utah)

—————————————————

**ORDER AND JUDGMENT**[*]
—————————————————

Before **PHILLIPS**, **McHUGH**, and **MORITZ**, Circuit Judges.
—————————————————

Aaron Sampson appeals the district court's order granting summary judgment

to Kane Is Able, Inc. (Kane). For the reasons explained below, we affirm.

**Background**

In 2015, Kane hired Sampson, who is African American, as a lead lift-truck

operator at its warehouse in Salt Lake City, Utah. Like lift-truck operators without

the "lead" designation, Sampson's duties included operating a forklift to move

materials in the warehouse. The lead designation gave him some supervisory

———————————————

[*] This order and judgment is not binding precedent, except under the doctrines
of law of the case, res judicata, and collateral estoppel. But it may be cited for its
persuasive value. *See* Fed. R. App. P. 32.1; 10th Cir. R. 32.1.

authority over other lift-truck operators: he could oversee their work and train them, but he could not discipline them.

In November 2015, Sampson told his supervisors that his coworkers were mistreating him based on his race. He later repeated this complaint, along with others, to Kane's human-resource department. Kane investigated his complaints but found them unsubstantiated. Sampson also received two negative performance reports; although he later admitted to the underlying conduct, he also believed the reports were unfair. In early June 2016, Sampson filed an intake form with the Utah Antidiscrimination & Labor Division (UALD), seeking to file a formal charge of race-based discrimination against Kane; on June 8, he told Kane that he had done so.

Also in June, Kane investigated two incidents allegedly involving Sampson "rummag[ing] through" both a coworker's and his supervisor's desks. App. vol. 5, 544. In particular, in April, one of Sampson's coworkers saw Sampson going through her desk; she reported it to another employee. Then, on May 31, another employee saw Sampson going through his supervisor's desk; the employee reported this incident to the supervisor on June 1. On June 15, human-resource personnel learned of these allegations and initiated an investigation. The next day, they asked the coworker and supervisor for written statements about the incidents. Sampson denied that either incident occurred. On June 30, Kane suspended Sampson with pay pending the outcome of the investigation.

Kane ultimately found the allegations regarding Sampson's rummaging through the coworker's and supervisor's desks to be credible. Kane told Sampson

2

that his actions constituted "gross misconduct" warranting immediate termination. App. vol. 2, 198. But because Kane did not investigate "in a time frame more contemporaneous with" the relevant incidents, it chose instead to suspend Sampson without pay for one week, beginning on July 21; reduce his pay by 6.7% (from $14.86 to $13.86 per hour); and remove his lead designation. *Id.*

But after his one-week suspension without pay, Sampson never returned to work; he testified that he viewed Kane's actions as a termination. When Sampson did not return to work as scheduled on Thursday, July 28, Kane warned him that if he failed to report to work on July 29 and August 1, Kane would view his absence as if he had "terminated [his] employment." *Id.* at 200. And when Sampson failed to return to work on either July 29 or August 1, Kane informed Sampson that it was characterizing his actions as a voluntarily termination of his employment.

Sampson subsequently sued Kane, and Kane moved for summary judgment. Sampson consented to entry of judgment on all but two of his claims: that Kane violated both 42 U.S.C. § 1981 and a provision of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-3(a), by terminating him in retaliation for raising his concerns with Kane personnel and the UALD.

The district court granted Kane's motion, finding that Sampson had not demonstrated a prima facie case of retaliation under § 1981 or Title VII because no reasonable jury could conclude that Kane constructively discharged Sampson. Sampson appeals.

3

## Analysis

"We review the district court's order granting summary judgment de novo, applying the same standard as the district court." *Fassbender v. Correct Care Sols., LLC*, 890 F.3d 875, 882 (10th Cir. 2018). Summary judgment is appropriate if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A fact is 'material' if, under the governing law, it could have an effect on the outcome of the lawsuit. A dispute over a material fact is 'genuine' if a rational jury could find in favor of the nonmoving party on the evidence presented." *EEOC v. Horizon/CMS Healthcare Corp.*, 220 F.3d 1184, 1190 (10th Cir. 2000) (citation omitted). We view the evidence before the district court "in the light most favorable to the nonmoving party" and draw any reasonable inferences from that evidence in the nonmoving party's favor. *Fye v. Okla. Corp. Comm'n*, 516 F.3d 1217, 1223 (10th Cir. 2008).

To establish a retaliation claim under § 1981 or Title VII, a plaintiff must either present direct evidence of discrimination or proceed under the burden-shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *Crowe v. ADT Sec. Servs., Inc.*, 649 F.3d 1189, 1194 (10th Cir. 2011) (noting that "the standards are the same" for § 1981 and Title VII). Here, as he did below, Sampson acknowledges that there is no direct evidence that Kane acted with a retaliatory motive. Like the district court, we therefore evaluate his retaliation claims under the *McDonnell Douglas* framework.

4

Under this framework, Sampson bears the initial burden of making a prima facie demonstration of unlawful retaliation by showing that "(1) he engaged in protected activity; (2) he suffered an adverse employment action; and (3) there is a causal connection between his protected activity and the adverse employment action." *Davis v. Unified Sch. Dist. 500*, 750 F.3d 1168, 1170 (10th Cir. 2014). If Sampson makes this showing, then Kane bears the burden of "offer[ing] a legitimate, nonretaliatory reason for its decision." *Twigg v. Hawker Beechcraft Corp.*, 659 F.3d 987, 998 (10th Cir. 2011). And if Kane makes such a showing, the burden returns to Sampson to demonstrate that Kane's reason is pretextual. *Id.*

Here, the district court did not reach the latter steps of the *McDonnell Douglas* framework because it concluded that Sampson failed to meet his initial burden. In particular, the district court determined that Sampson failed to demonstrate an adverse employment action. Challenging this determination on appeal, Sampson argues that a reasonable jury could find he suffered an adverse employment action because Kane either actually discharged him or constructively discharged him. Specifically, Sampson argues that Kane actually or constructively discharged him by suspending him for a week without pay, "eliminating his position" as lead lift-truck operator, removing his supervisory responsibilities, and reducing his pay. Aplt. Br. 31. And according to Sampson, the events leading up to his termination "only added to the objectively intolerable conditions" that made it impossible for him to return. *Id.* at 35. We disagree.

5

As an initial matter, it appears that Sampson never presented his actual-discharge argument to the district court. He therefore forfeited any such argument. *See Richison v. Ernest Grp., Inc.*, 634 F.3d 1123, 1128 (10th Cir. 2011). And although we can review forfeited arguments for plain error, Sampson's failure to argue for plain error on appeal effectively waived his actual-discharge argument. *See id.* at 1130–31. Nevertheless, we have discretion to review a forfeited or waived argument, and we exercise that discretion here. *See Medina v. Catholic Health Initiatives*, 877 F.3d 1213, 1227 n.6 (10th Cir. 2017) (noting that "waiver is a discretionary doctrine").

To show actual discharge, Sampson must make a prima facie demonstration that Kane's language or conduct would "logically lead a prudent person to believe" he or she had been discharged. *Fischer v. Forestwood Co.*, 525 F.3d 972, 979 (10th Cir. 2008) (quoting *Chertkova v. Conn. Gen. Life Ins. Co.*, 92 F.3d 81, 88 (2d Cir. 1996)). Stated differently, "[a]n actual discharge does not occur . . . when the employee chooses to resign rather than work under undesirable conditions." *Id.* at 980. Sampson argues that the elimination of his lead designation meant he had no position to return to after his suspension. But Sampson's position was not eliminated; instead, Kane repeatedly asked Sampson to return to work as a lift-truck operator without the lead designation. And a "prudent person" would not "logically" interpret Kane's requests that Sampson return to work to mean that "his [or her] tenure ha[d] been terminated." *Id.* at 979 (quoting *Chertkova*, 92 F.3d at 88). Thus, Sampson

6

"cho[se] to resign rather than" return to Kane in an "undesirable" position as a lift-truck operator, and Kane did not actually discharge Sampson. *Id.* at 980.[1]

Next, Sampson argues a reasonable jury could find that Kane constructively discharged him and that the district court erred in concluding otherwise. Constructive discharge occurs when an employer's actions make working conditions "so difficult" or "intolerable" that the employee "ha[s] no other choice but to quit." *Hiatt v. Colo. Seminary*, 858 F.3d 1307, 1318 (10th Cir. 2017) (quoting *Bennett v. Windstream Commc'ns, Inc.*, 792 F.3d 1261, 1269 (10th Cir. 2015)). This standard is objective: the court "disregard[s] both the employee's subjective view of the workplace environment and the employer's subjective intentions regarding the employee." *Baca v. Sklar*, 398 F.3d 1210, 1216 (10th Cir. 2005). And if an employee resigns of his "own free will, even as a result of the employer's actions, that employee will not be held to have been constructively discharged." *Id.* (quoting *Jeffries v. Kansas*, 147 F.3d 1220, 1233 (10th Cir. 1998), *abrogated on other grounds by Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742 (1998)).

Sampson argues that Kane's actions—suspending him for a week without pay; removing his lead designation and supervisory responsibilities; and reducing his pay

---

[1] Sampson's reliance on *McInerney v. United Air Lines, Inc.*, 463 F. App'x 709 (10th Cir. 2011) (unpublished), does not alter our conclusion. There, the employer had discretion to extend the leave of an employee who "desperately wanted to keep working," but it instead decided to terminate the employee. *Id.* at 716–17. Here, by contrast, Kane did not terminate Sampson's employment; it repeatedly asked Sampson to come back. That Sampson chose not to return does not mean that Kane actually terminated him.

7

by $1 per hour—constitute constructive discharge. And it is true that "[a] perceived demotion or reassignment to a job with lower status or lower pay may, depending upon the individual facts of the case, constitute aggravating factors that would justify [a] finding of constructive discharge." *James v. Sears, Roebuck & Co.*, 21 F.3d 989, 993 (10th Cir. 1994). But whatever Sampson's subjective impression of his reduced pay and attendant loss of responsibilities, he has not shown that a reasonable jury could find these conditions so "objectively intolerable" that he "had no other choice but to quit." *Hiatt*, 858 F.3d at 1318 (quoting *Bennett*, 792 F.3d at 1269).

The cases Sampson cites to support his constructive-discharge argument all involve some combination of large pay cuts, great losses of responsibility, and being forced to choose between quitting or being terminated. *See, e.g.*, *Douglas v. Orkin Exterminating Co.*, No. 98-8076, 2000 WL 667982, at *4 (10th Cir. 2000) (unpublished) (reversing summary judgment for employer on state-law breach-of-contract claim where employer "demoted [employee] from the highest to the lowest position available . . . and reduced his compensation by more than half"); *James*, 21 F.3d at 991, 993 (affirming jury's constructive-discharge finding where employees could either quit with 35% pension-benefit cut or stay "while being harassed or moved to jobs where unreachable quotas could be used as a pretext for firing them"); *Spulak v. K Mart Corp.*, 894 F.2d 1150, 1154 (10th Cir. 1990) (affirming jury's constructive-discharge finding where employer gave employee choice between either quitting and taking early retirement benefits or being terminated and losing retirement benefits), *abrogated on other grounds by Hazen Paper Co. v. Biggins*, 507

8

U.S. 604 (1993); *Cockrell v. Boise Cascade Corp.*, 781 F.2d 173, 175, 178 (10th Cir. 1986) (reversing directed verdict for employer because facts could support constructive-discharge finding where employee believed he would receive 40% pay cut along with demotion from managing five lumberyards to one).

By contrast, Sampson faced far less onerous consequences from Kane's actions. Indeed, Sampson concedes that "taken alone," Kane's decision to reduce his pay 6.7%, from $14.86 per hour to $13.86 per hour, "would likely not support [his] claim." Rep. Br. 6. And even combining that pay cut with the one-week unpaid suspension and the loss of some responsibility is not enough to show constructive discharge in this case. As lead lift-truck operator, Sampson shared many of the same duties as other lift-truck operators, although he also had some authority to oversee lift-truck operations. And he himself admits that even though he oversaw some of the work in the warehouse, he lacked the authority to discipline his coworkers or even to refer to himself as a supervisor. And rather than giving him "no choice but to quit," Kane repeatedly asked him to return as a lift-truck operator with a 6.7% pay cut and many of the same duties as a lead lift-truck operator. These consequences are not so "objectively intolerable" that Sampson "had no other choice but to quit." *Hiatt*, 858 F.3d at 1318 (quoting *Bennett*, 792 F.3d at 1269). And as the district court concluded, this remains true despite Sampson's subjective belief that Kane had terminated him; the constructive-discharge test is purely objective. *See id.*

Accordingly, Sampson has not shown that "the individual facts of th[is] case[] constitute aggravating factors that would justify [a] finding of constructive

9

discharge." *James*, 21 F.3d at 993. He therefore cannot establish a prima facia case of retaliatory discrimination. *See Davis*, 750 F.3d at 1170.

## Conclusion

Because Sampson fails to make a prima facie demonstration that "he suffered an adverse employment action" by either actual or constructive discharge, we decline to consider his remaining arguments. *Davis*, 750 F.3d at 1170. Accordingly, we affirm the district court order granting summary judgment to Kane.

Entered for the Court


Nancy L. Moritz
Circuit Judge