STARLIGHT INTERNATIONAL, INC., Plaintiff,

v.

Joseph B. HERLIHY, Jr., et al., Defendants.

Civil Action No. 97–2329–GTV.

United States District Court, D. Kansas, Kansas City Division.

Dec. 28, 1999.

John C. Aisenbrey, Sean W. Colligan, Stinson, Mag & Fizzell, P.C., Kansas City, MO, Stanley D. Davis, Shook, Hardy & Bacon

L.L.P., Kansas City, MO, Eric Alan Kuwana, Charles E. Talisman, David A. Colodny, Michael T. Wood, Ronald S. Liebman, Patton Boggs, L.L.P., Washington, DC, for Starlight International Inc.

Robert H. Gardner, Mark D. Murphy, R. Mark Nasteff, Murphy & Nasteff, P.A., Overland Park, KS, for Joseph B. Herlihy, Jr., 21st Century Enterprises Limited, the Miller Group, the Miller/21st Century Group, Ray Metcalfe.

David J. Dawes, Venstraat 65, Belgium, for David J. Dawes.

Marcy B. Uphoff, Mark D. Murphy, R. Mark Nasteff, Murphy & Nasteff, P.A., Overland Park, KS, for Bruce, Metcalf & Co., Alan J. Bruce.

## *MEMORANDUM AND ORDER*

RUSHFELT, United States Magistrate Judge.

On June 3, 1999, the court sustained in part, overruled in part, and deferred in part Plaintiff's Motion for Sanctions Against the Miller Group Defendants and Their Counsel By Reason of Bad Faith Discovery Tactics and Failures to Comply with Court Orders (doc. 228). (*See* Mem. & Order of June 3, 1999, doc. 325, hereinafter Order, [published at 186 F.R.D. 626].) The court deferred entry of sanctions, until after plaintiff submitted affidavits of costs and expenses incurred. Plaintiff has filed its affidavits (docs. 329, 330, and 340). Defendants Joseph B. Herlihy, Jr., 21st Century Enterprises Limited, The Miller Group a/k/a The Miller Group/21st Century Enterprises Limited, and Alan J. Bruce (collectively referred to as the Miller Group Defendants) and their counsel have responded to them (doc. 351). The court is now prepared to enter sanctions.

■ The court found a "substantial monetary sanction" warranted under Fed.R.Civ.P. 26(g)(3) and 37(b) and (d). (Order at 28–35.) It also found sanctions appropriate under 28 U.S.C. § 1927. (Order at 35–37.) It now determines the appropriate monetary sanction under the various provisions of the Federal Rules of Civil Procedure. Each provision grants the court discretion to award reasonable costs and expenses, including attorney fees, to the wronged party. The Tenth Circuit Court of Appeals has set out three factors that the court should expressly consider in determining the proper monetary sanction: (1) the reasonable expenses incurred as a result of the sanctionable misconduct, including reasonable attorney fees; (2) the minimum amount necessary to deter future misconduct; and (3) the ability of the sanctioned party or attorney to pay the sanction. *White v. GMC,* 908 F.2d 675, 684–85 (10th Cir.1990). These factors "serve as limitations on the amount assessed." *Id.* at 684.

Generally, the proper starting point is to determine the reasonable expenses incurred, including attorney fees. This is a two-step process. The court should determine both the reasonable attorney fees incurred and those expenses reasonably incurred, excluding attorney fees. The determination of what constitutes a reasonable fee entails a lodestar calculation. *Id.* Once the court completes these determinations, it combines the two figures into a total amount of reasonable expenses incurred. This total acts as a maximum award for reasonable expenses, including attorney fees.

The court may address these two related determinations in any order. In this instance it first determines the reasonable attorney fees incurred as a result of the sanctionable conduct of the Miller Group Defendants and their counsel.

> The most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended . . . multiplied by a reasonable hourly rate. This calculation provides an objective basis on which to make an initial estimate of the value of a lawyer's services. The party seeking an award of fees should submit evidence supporting the hours worked and rates claimed. Where the documentation of hours is inadequate, the district court may reduce the award accordingly.
>
> The district court also should exclude from this initial fee calculation hours that were not "reasonably expended." Cases may be overstaffed, and the skill and experience of lawyers vary widely. Counsel for the prevailing party should make a good

faith effort to exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary, just as a lawyer in private practice ethically is obligated to exclude such hours from his fee submission. "In the private sector, 'billing judgment' is an important component in fee setting. It is no less important here. Hours that are not properly billed to one's *client* also are not properly billed to one's *adversary* pursuant to statutory authority."

*Hensley v. Eckerhart,* 461 U.S. 424, 433–34, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983) (citations omitted) (emphasis in original). Although *Hensley* is a civil rights case brought under 42 U.S.C. § 1988, its factors are generally equally applicable in the context of awarding reasonable fees as a sanction. *See*

*White v. GMC,* 908 F.2d 675, 684–85 (10th Cir.1990).

## I. Reasonable Hours

The "first step in calculating the lodestar" is to "determin[e] the number of hours reasonably spent by counsel for the party seeking fees." *Case v. Unified Sch. Dist. No. 233,* 157 F.3d 1243, 1250 (10th Cir.1998). Plaintiff delineates time expended on six tasks: (1) trying to secure discovery without judicial intervention; (2) working on motion to compel; (3) responding to motion for protective order; (4) depositions; (5) attempting to secure compliance with directives of the court; and (6) working on motion for sanctions. The following table summarizes the claimed attorney time for the tasks:

| Attorney | Task 1 | Task 2 | Task 3 | Task 4 | Task 5 | Task 6 | Total |
|---|---|---|---|---|---|---|---|
| Charles E. Talisman | 5.50 | 17.25 | 6.75 | 42.75 | 1.50 | 33.50 | 107.25 |
| Eric A. Kuwana | 4.00 | 15.75 | 30.00 | 41.00 | 0.00 | 22.00 | 112.75 |
| Michael T. Wood | 5.00 | 2.75 | 16.50 | 35.25 | 0.00 | 73.75 | 133.25 |
| Jeannie Yim | 0.00 | 5.50 | 0.00 | 0.00 | 0.00 | 0.00 | 5.50 |
| Jocelyn A. Aqua | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 16.50 | 16.50 |
| Jonathan D. Robbins | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 35.25 | 35.25 |
| Stanley D. Davis | 2.00 | 0.95 | 0.80 | 0.00 | 0.20 | 6.10 | 10.05 |
| Sean W. Colligan | 0.50 | 2.50 | 7.75 | 0.00 | 0.00 | 2.10 | 12.85 |
| TOTAL | 17.00 | 44.70 | 61.80 | 119.00 | 1.70 | 189.20 | 433.40 |

The Miller Group Defendants question some of the time expended on the various tasks. The court, nevertheless, finds nothing unreasonable about the time expended, except as follows:

■ The court will not award fees for 10.25 hours spent preparing a surreply in connection with the motion for protective order. The court declined to consider the surreply and admonished counsel for its filing. It will deduct 10.25 hours from the time expended by Eric Kuwana.

■ The court finds the time spent in connection with preparing the motion for sanctions unreasonable. Although extensive, the motion should not have taken nearly five forty-hour weeks. That time expenditure seems excessive Careful review of the submitted time records reveals entries, furthermore, which are typically excluded from awards of attorney fees. The court thus excludes 9.25 hours expended by Charles Talisman. He provides no description for the .25 hours. An entry dated November 4, 1998, indicates that Mr. Talisman spent nine hours on drafting and editing the motion for sanctions. That motion, however, had been filed September 28, 1998. Although this may simply be an error in appropriate allocation of time, the court will not speculate. Plaintiff has the burden to show entitlement to fees.

■ In addition the court generally does not award fees for time to conduct research. *Case v. Unified Sch. Dist. No. 233,* 157 F.3d

1243, 1253 (10th Cir.1998). Although it may be permissible to award fees for research in the context of sanctions, the court finds such time properly excluded to reduce the time spent on the motion for sanctions to a reasonable level. Many entries, furthermore, indicate research in addition to other activities. In such instance the court may entirely disregard the entry. Plaintiff has the burden to show entitlement to fees by presenting "time records that show how billed hours were allotted to specific tasks." *Id.* Parties do not satisfy that burden by lumping several activities into one time entry. Accordingly, the court excludes fourteen hours claimed by Mr. Wood and eight hours claimed by Ms. Aqua from the time spent on the motion for sanctions. It also eliminates the time spent by Ms. Yim and Mr. Robbins in their entirety, except for one-half hour by Mr. Robbins.

For the same reasons, the court excludes all time of Mr. Wood and Ms. Yim expended on the motions to compel and for protective order. Each entry indicates at least some time spent on research. The time records are not clear enough to differentiate between compensable and non-compensable activities.

With respect to time expended on depositions, the Miller Group Defendants suggest that all the expended time cannot be attributed to sanctionable misconduct. The court agrees to some extent. In August 1998, Mr. Bruce testified for 17.5 hours. The parties agreed to continue his deposition until October to enable him to familiarize himself with relevant information. In October he provided further testimony over the course of two days. Although the Miller Group Defendants inadequately prepared Bruce for both depositions, the depositions were not completely worthless. The court finds twenty hours of actual testimony time wasted due to the sanctionable misconduct of the Miller Group Defendants and their counsel. It also finds that the misconduct resulted in additional preparation for a second round of depositions. That preparation would have been unnecessary had Mr. Bruce been adequately prepared to answer questions upon his first deposition. Counsel for plaintiff reasonably expended another four hours preparing for the second deposition.

The court will not attribute any travel time to the misconduct here at issue. Neither trip to London, England was solely for deposing Mr. Bruce. Plaintiff deposed other individuals as well. Both trips, furthermore, were planned prior to the first deposition of Bruce. The court also finds the use of multiple attorneys at the depositions unnecessary. Plaintiff has shown no need for multiple attorneys at the depositions. The court will thus allow only time expended by lead counsel, Charles Talisman.

After making appropriate reductions, the following table sets forth time reasonably spent on the six tasks:

| Attorney | Task 1 | Task 2 | Task 3 | Task 4 | Task 5 | Task 6 | Total |
|---|---|---|---|---|---|---|---|
| Charles E. Talisman | 5.50 | 17.25 | 6.75 | 24.00 | 1.50 | 24.25 | 79.25 |
| Eric A. Kuwana | 4.00 | 15.75 | 19.75 | 0.00 | 0.00 | 22.00 | 61.50 |
| Michael T. Wood | 5.00 | 0.00 | 0.00 | 0.00 | 0.00 | 59.75 | 64.75 |
| Jeannie Yim | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| Jocelyn A. Aqua | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 8.50 | 8.50 |
| Jonathan D. Robbins | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.50 | 0.50 |
| Stanley D. Davis | 2.00 | 0.95 | 0.80 | 0.00 | 0.20 | 6.10 | 10.05 |
| Sean W. Colligan | 0.50 | 2.50 | 7.75 | 0.00 | 0.00 | 2.10 | 12.85 |
| TOTAL | 17.00 | 36.45 | 35.05 | 24.00 | 1.70 | 123.20 | 237.40 |

## II. Reasonable Rate

Six of the eight attorneys retained by plaintiff hail from Washington, D.C. They charge hourly rates ranging from $125 to $290 per hour. They submit a document entitled "Partner, Associate & Legal Assistant Billing Rate Survey *for* Law Firms National Edition" to support their rates. (*See* Ex. E, attached to Decl. Talisman, doc. 329.) Plaintiff also retained two local attorneys. They charge hourly rates ranging from $155 to $210 per hour. They proffer nothing to support their rates.

"The first step in setting a rate of compensation for the hours reasonably expended is to determine what lawyers of comparable skill and experience practicing in the area in which the litigation occurs would charge for their time." *Case v. Unified Sch. Dist. No. 233*, 157 F.3d 1243, 1256 (10th Cir.1998) (quoting *Ramos v. Lamm*, 713 F.2d 546, 555 (10th Cir.1983)). Reasonable fees "are to be calculated according to the prevailing market rates in the relevant community." *Blum v. Stenson*, 465 U.S. 886, 895, 104 S.Ct. 1541, 79 L.Ed.2d 891 (1984). "The relevant community is the place of trial." *Baty v. Willamette Indus., Inc.*, 985 F.Supp. 1002, 1005 (D.Kan. 1997).

> [T]he burden is on the fee applicant to produce satisfactory evidence—in addition to the attorney's own affidavits—that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation. A rate determined in this way is normally deemed to be reasonable, and is referred to—for convenience—as the prevailing market rate.

*Blum*, 465 U.S. at 895 n. 11, 104 S.Ct. 1541.

In this instance plaintiff has provided nothing from which the court can determine the prevailing rate in this locale. "Absent other evidence of prevailing market rates the district court must rely on all relevant factors known to the court in establishing the reasonable rate to be applied in multiplying the number of hours by the hourly rate to derive the 'lodestar' figure." *Lucero v. City of Trinidad*, 815 F.2d 1384, 1385 (10th Cir. 1987). " Only if the district court 'does not have before it adequate evidence of prevailing market rates may the court, in its discretion, use other relevant factors, including its own knowledge, to establish the rate.'" *Ellis v. University of Kan. Med. Ctr.*, 163 F.3d 1186, 1203 (10th Cir.1998) (quoting *Case*, 157 F.3d at 1257).

In the area of corporate and business law the prevailing rate in the relevant community appears to be $155 for lead counsel and $120 for other attorneys. *See Cadena v. Pacesetter Corp.*, No. 97–2659, 1999 WL 450891, at *6 (D.Kan. Apr. 27, 1999); *see also, Baty v. Willamette Indus.*, No. Civ.A. 96–2181–GTV, 1999 WL 713959, at *2 (D.Kan. Aug. 16, 1999) (indicating $155 per hour for lead counsel is reasonable). Adjusted for inflation, these rates appear in line with the 1997 Economic Survey of Kansas Lawyers found in Volume 66, Number 10 of the December 1997 Journal of the Kansas Bar Association. The Tenth Circuit Court of Appeals has suggested that the Journal survey "provide[s] some evidence of market rates." *Case*, 157 F.3d at 1256 n. 1. The court thus finds a rate of $155 per hour reasonable for Mr. Talisman and a rate of $120 per hour reasonable for the other attorneys.

## III. Lodestar Calculation

The following table summarizes the hours reasonably spent by each attorney multiplied by the reasonable rate of compensation for him or her:

| Attorney | Total Hours | Reasonable Rate | Lodestar Figure |
| --- | --- | --- | --- |
| Charles E. Talisman | 79.25 | $150.00 | $11,887.50 |
| Eric A. Kuwana | 61.50 | $120.00 | $ 7,380.00 |
| Michael T. Wood | 64.75 | $120.00 | $ 7,770.00 |
| Jeannie Yim | 0.00 | $120.00 | $ 0.00 |
| Jocelyn A. Aqua | 8.50 | $120.00 | $ 1,020.00 |

| | | | |
|---|---|---|---|
| Jonathan D. Robbins | 0.50 | $120.00 | $ 60.00 |
| Stanley D. Davis | 10.05 | $120.00 | $ 1,206.00 |
| Sean W. Colligan | 12.85 | $120.00 | $ 1,542.00 |
| | | Total | $30,865.50 |

## IV. Other Reasonable Expenses

Plaintiff also claims expenses, other than attorney fees, resulting from the sanctionable misconduct of the Miller Group Defendants and their counsel. The court may properly include such expenses in an award of sanctions. Plaintiff claims $33,149.70 in expenses relating to the international depositions. Recognizing that some of these expenses would have occurred regardless of the sanctionable misconduct, it asks the court to only award half of that amount. It also claims $256.55 for costs to cover computer research incurred as a result of the misconduct. In addition it claims $1,108.20 for costs incurred by local counsel.

The court generally determines how much of these claimed expenses plaintiff reasonably incurred as a result of the conduct which led to imposition of sanctions. In this instance such an undertaking appears unnecessary and a waste of valuable judicial resources. As will be seen *infra,* the determined amount of reasonable fees alone exceeds the amount the court views as necessary to deter future wrongdoing. There is no need to further increase the amount of reasonable expenses. Once they exceed the amount necessary to deter future wrongdoing, it is unnecessary to continue with the process. The total amount of reasonable expenses incurred, including attorney fees, establishes the maximum amount of any award of such expenses. The court, however, limits any award of sanctions to that amount deemed necessary to deter future misconduct.

## V. Who Should Bear the Sanctions

To assist in appellate review, the court must explain "why the particular circumstances demonstrate[s] a need for the sanctions imposed." *Russell v. Weicker Moving & Storage Co. (In re Russell),* 746 F.2d 1419, 1420 (10th Cir.1984) *(per curium ).* Such explanation should include a discussion of the choice of appropriate sanctions and the selection of the person against whom the sanction is to be imposed. *Id.* In its previous Memorandum and Order the court determined that a substantial monetary sanction appears necessary.[1] (Order at 35.) It there explained why it chose to impose that sanction. *(See generally, id.* at 30–35.) It thoroughly discussed the misconduct of the Miller Group Defendants and their counsel. *(Id.* at 4–27.) It now determines who should bear the sanctions to be imposed.

■ To the extent possible the court should impose the sanction on the party or attorney responsible for the sanctionable conduct. *Mulvaney v. Rivair Flying Serv., Inc. (In re Baker),* 744 F.2d 1438, 1442 (10th Cir.1984) *(en banc ).* "If the fault lies with the attorneys, that is where the impact of sanction should be lodged. If the fault lies with the clients, that is where the impact of the sanction should be lodged." *Id.* It is not always "possible to treat the client and the lawyer as a unit" when imposing sanctions. *Smith v. United States,* 834 F.2d 166, 171 (10th Cir.1987).

In this instance the court has found the Miller Group Defendants and their attorneys responsible for some sanctionable conduct. *(See generally,* Order at 4–37.) Accordingly, they all should bear some portion of the sanction. They are each at least partly responsible for the misconduct which occasions the sanctions. The court must determine, however, the apportionment. That determi-

---

1. Plaintiff invites the court to reconsider its determination that entry of default judgment is not warranted. The court declines the invitation. D.Kan. Rule 7.3 governs motions to reconsider. It provides a ten-day window of opportunity for filing such a motion. Were the court to construe the invitation of plaintiff as such a motion, it notes that plaintiff made its request well outside the ten-day period.

nation requires examination of the particular sanctionable conduct.

■ In this case numerous instances of misconduct led to the imposition of sanctions. The court found that defendants 21st Century, Miller Group, and Herlihy violated an order of the court by not providing information about the location and disposition of $3.5 million at issue in this case. (Order at 6.) The fault for such violation falls on them. While counsel oversee the discovery process, the court declines to hold the attorneys accountable for a failure by the clients to provide what has been ordered.

■ The court also found that defendants 21st Century and Miller Group engaged in sanctionable misconduct by failing to adequately prepare their representative for deposition. (Order at 15.) They and counsel share that responsibility. As a practical matter, it requires their cooperation to properly prepare the witness. The client provides necessary information regarding the entity which might otherwise be unknown to the chosen representative. Counsel otherwise prepares the representative to testify. Both client and counsel thus share responsibility for providing a properly prepared representative for deposition. In this instance defendant Bruce, as the chosen representative of defendants 21st Century and Miller Group, had inadequate information from which to answer questions presented to him. While counsel must shoulder some of the blame for the inadequately prepared representative, the fault primarily falls on the two entities for their failure to provide necessary information.

The court also found that defendant Bruce engaged in sanctionable misconduct by not preparing himself for deposition. (Order at 15.) Bruce appeared for deposition in both his individual capacity and as representative for defendants 21st Century and Miller Group. Although much of the fault for his unpreparedness lies with counsel and the entities Bruce represented, he should nevertheless shoulder some of it.

Defendant Bruce, furthermore, provided testimony inconsistent with interrogatories he had previously verified. (Order at 26.)

Due to many unknown factors which still exist, the court declined to place blame for the inconsistency. (*Id.*) It declines to do so now. The court should attribute to Bruce some fault, however, for the inconsistencies between his testimony and his sworn answers to interrogatories.

The court also noted other instances of misconduct: (1) failure to adequately answer interrogatories (Order at 16–19); (2) failure to appropriately respond to requests for production (*id.* at 19–22); (3) assertion without good faith basis that the principal place of business for 21st Century is London (*id.* at 25); and (4) inappropriate assertion of privilege during deposition of Bruce (*id.* 26–27). Fault for these transgressions appropriately lies with counsel. Instead of adequately supplementing interrogatories as ordered by the court, defendants 21st Century and Miller Group improperly relied upon Fed.R.Civ.P. 33(d) and referred to deposition testimony. (*Id.* at 16–17.) While addressing the propriety of sanctions under 28 U.S.C. § 1927, the court attributed that wrong-doing to counsel. (*Id.* at 36.) It also attributed to counsel the improper assertion of privilege. (*Id.*)

■ Although it did not specifically attribute to counsel the misconduct under numbers two and three above, it seems appropriate to assign fault for them to counsel. The failure to appropriately respond to the requests for production stems from a vague supplementation regarding the existence of additional documents to produce and a failure to clarify that supplementation. (Order at 19–22.) Counsel is responsible for assuring that supplemental responses clearly respond to requests for production. As practitioners of law they should recognize the ambiguity of the supplemental responses, especially when opponents have asked for clarification. The court also found no good faith basis for their asserting London as the principal place of business of defendant 21st Century. (*Id.* at 25.) The attorneys should shoulder the responsibility for that assertion.

Examining the sanctionable conduct in total, the court finds that defendant Bruce was responsible for a lesser part of it. The other Miller Group Defendants and counsel bear

responsibility for the bulk of the misconduct. The court will separately determine the minimum sanction necessary to deter the following groups: (1) counsel for the Miller Group Defendants; (2) defendant Bruce; and (3) the other Miller Group Defendants. It seems more appropriate to proceed in that manner, rather than consider one award of sanctions divided between the various wrongdoers. It finds no reason to aggregate the sanction award against the defendants and their counsel.

Defendant Bruce appears sufficiently independent from the others to consider sanctions against him separately. He is an attorney from London who provided services to the other Miller Group Defendants. The disparity between his misconduct and that of his fellow defendants likewise favors their separate consideration. In addition the misconduct of counsel is sufficiently distinct to warrant a separate imposition of sanctions. The court, nevertheless, sees no reason to segregate the other Miller Group Defendants. Defendants 21st Century and Miller Group share the fault for misconduct attributed to them. Defendant Herlihy, furthermore, is the sole owner, officer, and employee of defendant 21st Century. Any sanction imposed upon 21st Century will be borne by him.

The Tenth Circuit Court of Appeals directs the court to "explicitly weigh whether sanctions against the offending attorney will not serve the court's legitimate purpose in imposing sanctions." *See M.E.N. Co. v. Control Fluidics, Inc.,* 834 F.2d 869, 873 (10th Cir.1987) (quoting *D.G. Shelter Prods. Co. v. Forest Prods. Co.,* 769 F.2d 644, 645 (10th Cir.1985) (*en banc* )). In this instance imposing sanctions upon counsel alone would probably have no deterrent effect against the misconduct of the Miller Group Defendants. The court found them individually culpable. (Order at 33–34.) They presently provide nothing to change the finding. After review of the facts in light of existing binding prece-

dent, the court concludes that sanctions are appropriately placed on the parties, as well as on counsel. The misconduct attributed to defendants appears willful, within the meaning of existing case law. *See Kiely v. Shores Group, Inc.,* 160 F.R.D. 159, 160 (D.Kan. 1995) (explaining that a willful failure is any intentional failure and no wrongful intent need be shown). In accordance with *M.E.N. Co.* the court has made "specific findings on the issue of willful noncompliance." *See* 834 F.2d at 874.

## VI. Minimum Monetary Sanction Necessary to Deter

The court has determined that a substantial monetary sanction appears necessary. (Order at 35.) In making that determination, it considered the various purposes served by sanctions. It now determines the minimum monetary sanctions necessary to satisfy those purposes. Although the primary goal of sanctions is to deter misconduct, sanctions also serve to punish litigation abuse and compensate victims of such abuse.

After considering the submitted papers and reviewing the order of sanctions and the underlying conduct which led to the imposition of sanctions, the court imposes the following monetary sanction on the various wrongdoers: $1,000 against defendant Bruce; $7,000 against defense counsel; and $20,000 against the Miller Group Defendants, excluding Bruce. These amounts appear the minimum sanction necessary to deter and punish the particular wrongdoers. The court does not lightly impose such substantial sanctions. The underlying misconduct, however, warrants it.[2]

The court imposes the greatest sanction upon the Miller Group Defendants, excluding Bruce, because they appear chiefly responsible for the most egregious misconduct. They were directly and solely responsible for the refusal to provide information about the location and disposition of

---

**2.** In determining the appropriate amount of sanctions, the court has not considered a perceived failure of defendants Herlihy and Bruce to provide a privilege log as directed by a previous order of the court. All interested parties agree that they provided a log. Plaintiff now suggests the log is insufficient. In view of the other sanctionable misconduct, however, the court need not make that determination to determine an appropriate monetary sanction. Assuming the insufficiency of the log would not add to the monetary award imposed herein.

disputed funds. They failed to comply with specific orders of the court. Both the failure and refusal appear deliberate. Their effort to blame third-party defendant Ian Miller provides only an inadequate excuse. (*See* Order at 4–6.) It appears counsel unsuccessfully tried to obtain the information to forward to plaintiffs. Defendants 21st Century, Miller Group, and Herlihy were also partly responsible for twice poorly preparing a party representative for deposition. The egregiousness of the conduct (particularly the withholding of discovery) necessitates a corresponding substantial sanction.

 The court imposes a less severe, but nevertheless substantial monetary sanction, upon defense counsel. Although counsel at times acted improperly and without a plausible basis, nothing in the record indicates they intentionally abused the discovery process or intentionally made misrepresentations to the court. Their misconduct appears to stem from extremely poor judgment in misinterpreting the law, inadequately asserting facts and representations regarding the corporate place of business, and not diligently performing other duties as counsel, such as preparing the client for discovery. Counsel have already endured the public censure associated with the published order of sanctions. These factors mitigate the amount of monetary sanctions needed to deter future misconduct. Although recognizing that defense counsel participated in the discovery abuses and improperly directed Bruce to not answer some questions upon deposition, the court finds the misconduct of 21st Century, Miller Group, and Herlihy more deplorable. While the amount of sanctions is significant, it appears warranted.

 The court imposes the relatively minor sanction of $1,000 upon defendant Bruce. He either testified falsely or carelessly verified answers to interrogatories. He also took insufficient steps to prepare himself for deposition. He had no responsibility for the withholding of information from discovery. He has only an agency or employee relationship with the other Miller Group Defendants. A sanction in the amount of $1,000 appears sufficient to deter future misconduct.

## VII. Ability To Pay

After determining the minimum sanction necessary to deter future misconduct, the court assesses the ability of the sanctioned party or attorney to pay the sanction. *White v. GMC*, 908 F.2d 675, 684–85 (10th Cir. 1990). No one questions the ability of the parties or attorneys to pay. Plaintiff asks for more than twice the amount of imposed sanctions. In response to the request neither the Miller Group Defendants nor counsel indicate any inability to pay the requested amount. The ability to pay a lesser amount thus appears obvious. Nothing indicates an inability to pay. Consequently, the court imposes a $1,000 sanction against defendant Bruce; a $7,000 sanction against defense counsel; and a $20,000 sanction against the Miller Group Defendants, excluding Bruce.

The court recognizes that an award of $28,000 does not reimburse plaintiff for all costs and expenses incurred as a result of the discovery abuses. The amounts herein awarded to plaintiff satisfies a primary purpose of sanctions to deter future misconduct. It also adequately punishes the Miller Group Defendants and their counsel for the misconduct attributed to them. The sanction also compensates plaintiff somewhat for the expenses incurred. The court thus imposes sanctions of $28,000 as stated herein on the Miller Group Defendants and their counsel.

The court makes the $28,000 award of reasonable costs and expenses pursuant to Fed.R.Civ.P. 26(g)(3) and 37(b) and (d). The submission of written responses and objections to discovery which violates Rule 26(g)(2) warrant sanctions under Rule 26(g)(3). Disobeying orders of the court warrants sanctions under Rule 37(b)(2). Failing to appear prepared for deposition warrants sanctions under Rule 37(d). The court finds no need to differentiate between the rules. The same standards apply to each of them.

## VIII. Sanctions under 28 U.S.C. § 1927

 The court also found sanctions appropriate under 28 U.S.C. § 1927. (Order at 35–37.) The court may impose sanctions di-

rectly against counsel under § 1927 "for conduct that, viewed objectively, manifests either intentional or reckless disregard of the attorney's duties to the court." *RTC v. Dabney,* 73 F.3d 262, 265 (10th Cir.1995) (quoting *Braley v. Campbell,* 832 F.2d 1504, 1512 (10th Cir.1987)). The court found that defense counsel intentionally acted without a plausible basis, when they directed a deponent not to answer questions upon deposition and when they improperly invoked Fed. R.Civ.P. 33(d) and deposition testimony in answering interrogatories. (Order at 36.) Despite the appropriateness of sanctions under § 1927, the court declines to impose further sanctions against defense counsel. It looks at the misconduct of counsel and the various provisions for sanctions in the aggregate, not in a vacuum. While they may be appropriate under § 1927, the court finds additional sanctions under that statute unnecessary. The court has fashioned an appropriate sanction under the Federal Rules of Civil Procedure. The court finds additional sanctions unnecessary to deter future conduct of counsel. Sanctions under the Federal Rules of Civil Procedure adequately punish counsel for their misconduct. The amount of sanctions appropriate under § 1927, furthermore, are fully contained within the award of reasonable costs and expenses imposed herein. Plaintiff has thus been compensated for the excess costs caused by the conduct warranting sanctions under § 1927. The court will impose no further sanctions under that section.

### IX. Conclusion

Pursuant to Fed.R.Civ.P. 26(g)(3) and 37(b) and (d), the court awards plaintiff $28,000 for reasonable costs and expenses incurred as a result of the sanctionable misconduct of the Miller Group Defendants and their counsel. Within sixty days of the date of date of this order, defendants 21st Century, Miller Group, and Herlihy shall pay plaintiff $20,000 and file a receipt or certificate of payment with this court. Within that same time period, counsel for the Miller Group Defendants shall pay plaintiff $7,000 and file a receipt or certificate of payment with this court. Defendant Bruce shall pay plaintiff $1,000 and file a receipt or certificate of

payment with this court within that same sixty-day period. This entry of sanctions completes the ruling of the court with respect to Plaintiff's Motion for Sanctions Against the Miller Group Defendants and Their Counsel by Reason of Bad Faith Discovery Tactics and Failures to Comply with Court Orders (doc. 228.)

IT IS SO ORDERED.