Donna R. KAYHILL, Plaintiff,

v.

UNIFIED GOVERNMENT OF WYAN-
DOTTE COUNTY/KANSAS CITY,
KANSAS, et al., Defendants.

No. CIV. A. 99–2287–KHV.

United States District Court,
D. Kansas.

Nov. 21, 2000.

Donna R. Kayhill, Lawrence, KS, pro se.

Kenneth J. Moore, City of Kansas City, Kansas-Legal Department, Kansas City, KS, F. Charles Dunlay, IV, Unified Government Legal Department, Kansas City, KS, for defendants.

## MEMORANDUM AND ORDER

VRATIL, District Judge.

Donna R. Kayhill brings suit against the Unified Government of Wyandotte County/Kansas City, Kansas ("the Unified Government") alleging employment discrimination on the basis of race, religion, sex, national origin and disability. This matter comes before the Court on the Motion For Appointment Of Counsel (Doc. # 50) which plaintiff filed August 3, 2000; defendant's request for reasonable expenses and attorneys' fees which it incurred in making Defendants' Motion To Compel/Dismiss (Doc. # 35) filed July 5, 2000; the Motion For Summary Judgment (Doc. # 68) which defendant filed August 31, 2000; the Order To Show Cause (Doc. # 60) which the Court issued August 18, 2000; and Defendant's Motion For Sanctions (Doc. # 64) filed August 29, 2000.

## I. Plaintiff's Motion For Appointment Of Counsel

Plaintiff makes a second request for the Court to appoint counsel. See Motion For Appointment Of Counsel (Doc. # 50) filed August 3, 2000. On May 24, 2000, the Court denied her first request because she had not demonstrated financial inability to retain counsel. See Memorandum And Order (Doc. # 26) filed May 24, 2000, at 2–4. In making its determination, the Court looked to the combined income of plaintiff and her husband. See *id.* at 3–4. In her second request for counsel, plaintiff asserts that she has lost her job and is now unemployed.

Plaintiff does not have a constitutional or statutory right to appointed counsel. See *Castner v. Colo. Springs Cablevision*, 979 F.2d 1417, 1420 (10th Cir.1992). Title VII of the Civil Rights Act ("Title VII"), 42 U.S.C. §§ 2000e to §§ 2000e–17, provides that the district court in its discretion may appoint counsel for plaintiff "in such circumstances as the court may deem just." 42 U.S.C. § 2000e–5(f)(1).

■ The Court exercises extremely broad discretion in deciding whether to appoint counsel. See *Castner*, 979 F.2d at 1420. The Tenth Circuit has identified four factors which are relevant to the decision. See *id.* at 1421. Before the Court may appoint counsel, plaintiff must affirmatively show: (1) that she is financially unable to pay for counsel; (2) that she has diligently attempted to secure counsel; and (3) that her allegations of discrimination are meritorious. See *id.* In close cases, the Court considers a fourth factor—plaintiff's ability to present the case without counsel—as an aid in exercising discretion. See *id.* The determination to appoint counsel involves two competing considerations. In light of Congress' special concern regarding legal representation in Title VII actions, the Court must give "serious consideration" to plaintiff's request for counsel. *Id.* On the other hand, the court must keep in mind that Congress has not provided any mechanism for compensating such appointed counsel. Thoughtful and prudent use of the appointment power is necessary so that willing counsel may be located without the need to make coercive appointments. The indiscriminate appointment of volunteer counsel to undeserving claims will waste a precious resource and may discourage attorneys from donating their time. *Id.* at 1421.

The Court assumes for purposes of this ruling that plaintiff has satisfied the first two factors. Plaintiff's motion to appoint counsel makes no attempt, however, to demonstrate that her allegations of discrimination are meritorious. In her complaint, plaintiff alleges that defendant discriminated against her on the bases of race or color, religion, sex, national origin and disability in violation of Title VII and the Americans With Disabilities Act ("ADA"), 42 U.S.C. § 12111 et seq. See Complaint (Doc. # 1) filed June 28, 1999, at 2–3. In her filings in this case and her file with the Equal Employment Opportunity Commission ("EEOC"), plaintiff makes the following factual allegations:

- (1) On June 26, 1996, defendant hired plaintiff to work as a switchboard operator at the front desk. See Affidavit, at 1, in EEOC file.
- (2) On November 20, 1996, plaintiff complained of sexual and racial harassment by police officer Dennis Vallejo. Plaintiff's supervisors reprimanded her for not following the proper chain of command and did nothing about her complaint. See Complaint ¶ 11(1)-(3).
- (3) On February 11, 1997, plaintiff's supervisor removed sacred religious items, including an Eagle Feather, from plaintiff's desk in the front reception area. Plaintiff complained to the director, who told her that he would do nothing about it because her desk was in a public area. See id. ¶ 11(4)-(6). Around Christmas time, however, the reception area was decorated with a nativity scene and Christmas tree. See Pretrial Order (Doc. # 59), at 3 filed August 17, 2000.
- (4) From April 1997 to June 24, 1997, police officer Terrance Hall made sexual, racial and religious slurs to plaintiff. See Complaint ¶ 11(7)-(11). Plaintiff made repeated complaints to her supervisor about Hall's conduct, but her supervisor did nothing. See id. On June

12, 1997, plaintiff complained to the personnel director about the conduct of Vallejo and Hall. See id. ¶ 11(10). The personnel director said that he could do nothing about it. See id.

(5) In June 1997, defendant fired Vallejo because he made inappropriate sexual remarks to summer interns. See Affidavit, attached statement, in EEOC file. Plaintiff had encouraged the interns to complain. See id. In retaliation for their complaints about Vallejo, co-workers treated plaintiff and the interns badly. See id.

(6) On June 30, 1997, plaintiff was raped. See id. at 2. She took time off from work as a result. See id. When she returned to work, she found a rape report on her desk. See id. She complained that Hall had put it there. See id. On July 14, 1997, Hall complained that plaintiff had sexually harassed him. See id.

(7) On September 26, 1997, defendant moved plaintiff to the medical records department as a result of her problems with Hall. See id. Plaintiff did not want to change departments. See id.

(8) The employees in medical records, all female, were friends with Hall. See id. Throughout the time that plaintiff worked in the department, her co-workers were mean to her, teased her about the rape and called her "whore" and "coochie." See id. at 2–3.

(9) Plaintiff did not return to work after May 15, 1998, because she could not handle the co-worker harassment. See id. at 3. Defendant granted her leave until June 8, 1998. See id. On June 5, 1998, a co-worker called plaintiff and asked if she had been raped again. See id., attached statement. This upset plaintiff, and she did not call in or report to work on June 8, 9 and 10, 1998.[1] See id. at 3. On June 10, 2000, defendant fired plaintiff because she had failed to report or call in to work for three consecutive days.[2] See id. On June 15,

---

1. Plaintiff claims that she was physically and mentally unable to call in to work on these three days. See Affidavit, attached statement, in EEOC file.

2. According to defendant's motion for summary judgment, which plaintiff does not oppose, plain-

tiff had a long history of unexcused absences and she abused sick leave and leave without pay. See Memorandum In Support Of Motion For Summary Judgment (Doc. # 69) which defendant filed August 31, 2000, at 3–5.

1998, plaintiff's psychologist called defendant and reported that plaintiff had post traumatic stress disorder. See *id.*, attached statement.

An EEOC investigator determined that except for co-worker harassment, plaintiff's allegations of harassment are barred because they occurred more than 300 days before she filed her EEOC charge.[3] See Pre–Determination Interview dated March 17, 1999 in EEOC file. See *Castner*, 979 F.2d at 1422. The EEOC ultimately concluded that it was unable to determine a violation by defendant.[4] See Dismissal And Notice Of Rights dated March 29, 1999, in EEOC file.

Although plaintiff should have an opportunity to rebut the EEOC conclusions, the EEOC administrative finding is a "highly probative" factor for the Court to consider when determining the merit of plaintiff's claims.[5] Timely filing of a charge with the EEOC is a prerequisite to suit under Title VII. *Jones v. Runyon*, 91 F.3d 1398, 1399 (10th Cir.1996). To comply, plaintiff must file an EEOC charge within 300 days of defendant's allegedly unlawful action. 42 U.S.C. §§ 2000e–5(e); see also *Harrell v. Spangler, Inc.*, 957 F.Supp. 1215, 1219 (D.Kan.1997).[6] Plaintiff filed her EEOC charge on August 5, 1998, which makes her charge timely with respect to acts which occurred after October 10, 1997. Plaintiff's allegations concerning the removal of her religious items and harassment by Vallejo and Hall occurred before October 10, 1997 and are thus time barred.[7] In addition, it appears that plaintiff's disability claim is without merit. She testified in her deposition that no doctor has diagnosed her with

post traumatic stress disorder and that she never told defendant that she suffered from such disorder. See Deposition of Donna R. Kayhill, at 117 l.24 to 118 l.25, 119 l.6 to l.15, attached as Exhibit 1 to Memorandum In Support Of Motion For Summary Judgment(Doc. 69) filed August 31, 2000. Moreover, she alleges no facts to support a claim that defendant perceived her as disabled.

Thus, it appears that the only claim which may potentially have merit is the claim of alleged harassment by female co-workers. Plaintiff alleges that the co-workers were mean to her, teased her about being raped and called her "whore" and "coochie." Although her complaint is not clear, it appears that plaintiff alleges co-worker sexual harassment and/or retaliation. In either case, the claim is weak. As to co-worker retaliation, Title VII imposes employer liability only in cases where supervisory or management personnel orchestrated the retaliatory harassment or knew about the retaliatory harassment and acquiesced in it in such a manner as to condone and encourage the co-workers' actions.[8] See *Gunnell v. Utah Valley State College*, 152 F.3d 1253, 1265 (10th Cir.1998). The Court discerns no allegations which satisfy this standard.

With respect to sexual harassment, plaintiff must show that the harassment constitutes discrimination because of sex, as opposed to conduct merely tinged with offensive sexual connotations. See *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 80–81, 118 S.Ct. 998, 140 L.Ed.2d 201 (1998) (harassment is not automatically sex discrimination merely because words used have sexual content or connotations).

---

3. The investigator's notes do not address the timeliness of plaintiff's disability discrimination claim.

4. The EEOC file does not contain specific findings with respect to the merit of the co-worker harassment or disability discrimination claims.

5. Plaintiff has not attempted to rebut the EEOC conclusions despite ample opportunity to do so.

6. Title VII actually establishes alternative limitation periods of 180 and 300 days. The longer limitation period applies in Kansas because it is a so-called "deferral state," i.e., one having adopted a law against discrimination and authorized a state agency to grant relief from it. See *Harrell*, 957 F.Supp. at 1219 n. 4.

7. Vallejo was fired in June 1997, and plaintiff does not allege harassment by Hall after her transfer to medical records on September 26, 1997.

8. Title VII imposes a lower standard for employer liability for co-worker discriminatory harassment. In that case, an employer is liable if it knew or should have known about the violation and failed to respond in a reasonable manner. See *Ford v. West*, 222 F.3d 767, 775–76 (10th Cir.2000).

In order to prove same-sex discrimination, plaintiff must show either that the harasser is homosexual or that the harasser is motivated by general hostility to the presence of women in the workplace. See *id.* at 80, 118 S.Ct. 998. The critical issue is "whether members of one sex are exposed to disadvantageous terms or conditions of employment to which members of the other sex are not exposed." *Id.* (quotation and citation omitted). Plaintiff does not allege that her co-workers were homosexual, or that they were hostile toward women in general. Thus it appears that her co-worker sexual harassment claim is without merit as well.

The merit of plaintiff's claims is not a close issue. The Court will nonetheless examine plaintiff's ability to present her case without counsel. In this regard, the Court looks to the complexity of the legal issues and plaintiff's ability to gather and present crucial facts. See *Castner*, 979 F.2d at 1422. The Court initially notes that the factual and legal issues in this case are not complex. In addition, the Court has read numerous filings by plaintiff and has observed and interacted with her in person and over the telephone on several occasions. Based on these experiences, the Court finds that plaintiff is an intelligent and articulate individual who can gather and present facts crucial to her case. Thus the Court concludes that plaintiff is able to present her case without counsel.

Finally, the Court finds that other factors warrant denial of plaintiff's request. Plaintiff has repeatedly failed to meet her discovery obligations despite numerous efforts by defense counsel to assist her and specific instructions from the Court on several occasions.[9] The Court has found that plaintiff is sufficiently sophisticated to understand the procedural deadlines in this case and to comprehend that she must demonstrate good cause why they should be extended if she cannot meet them. See Order (Doc. # 61) filed August 18, 2000. Thus the Court concludes that plaintiff has either deliberately failed to meet her obligations, or at least has failed to treat them seriously. In addition, the Court notes that to appoint counsel at this late date would impose a significant burden on volunteer counsel to begin work on a new case which is scheduled for trial in less than a month. Lastly, the Court observes that plaintiff was financially able to retain counsel at the time when she filed suit. She did not do so. She has not demonstrated circumstances which justify appointment of counsel at this time.

## II. Attorneys' Fees

At the pretrial conference on August 17, 2000, the Court sustained Defendants' Motion To Compel (Doc. # 44) filed July 31, 2000 and Defendants' Motion To Compel/Dismiss (Doc. # 35) filed July 5, 2000. See Clerk's Courtroom Minute Sheet (Doc. # 58) filed August 17, 2000; Order (Doc. # 61) filed August 18, 2000. The Court found that plaintiff had not provided timely disclosures pursuant to Rule 26(a)(1), Fed.R.Civ.P., and that plaintiff had failed to timely respond to defendant's interrogatories and requests for production of documents. The Court ordered plaintiff to provide full disclosures and full and complete responses to document production requests and interrogatories no later

9. On August 18, 2000, the Court issued an Order To Show Cause (Doc. # 60) which noted that plaintiff was in default with regard to numerous pretrial deadlines including (1) failure to timely provide Rule 26(a)(1) disclosures; (2) failure to timely provide record release authorizations; (3) failure to timely and completely respond to interrogatories and document requests; (4) failure to participate in good faith in the preparation of a joint pretrial order; (5) appearance at the initial pretrial conference substantially unprepared to participate, thereby causing waste of time for the Court and opposing counsel; and (6) failure to truthfully advise the Court in writing of any change of address and telephone number, as required by D. Kan. 5.1(c). The Court ordered plaintiff to show cause in writing why the Court should not issue sanctions pursuant to Rule 37(b)(2)(B), (C) and (D), Fed.R.Civ.P., including possible dismissal of the case. See Order To Show Cause (Doc. # 60). On August 25, 2000, plaintiff filed a response which cited various reasons for her noncompliance including (1) that she had given her personal papers to a lawyer to review; (2) a new job; (3) change in residence; (4) problems with mail; and (5) injury to a pet. See plaintiff's response to show cause order (Doc. # 66) filed August 25, 2000. She does not specifically explain how any of these circumstances prevented her from complying with pretrial deadlines in the case.

than 5:00 p.m. on Friday, August 25, 2000 by hand delivery to defense counsel. See Clerk's Courtroom Minute Sheet (Doc. # 58) and Order (Doc. # 61). In doing so, the Court explained to plaintiff in detail that she must provide written responses to defendant's document production requests. The Court further found that defense counsel had made a good faith effort to obtain the disclosures and discovery responses, and that plaintiff had not shown that her failure to meet the discovery obligations was substantially justified or that other circumstances made an award of fees unjust. See Order (Doc. # 61). The Court recognized that plaintiff proceeds pro se, but it observed that "[s]he is sophisticated enough to understand deadlines ... and to comprehend that if she cannot meet them, she needs to demonstrate to the Court good cause why they should be extended." *Id.* The Court ordered plaintiff to pay the reasonable expenses which defendant had incurred in making the motions to compel, including attorneys' fees, pursuant to Rule 37(a)(4)(A), Fed.R.Civ.P. See Clerk's Courtroom Minute Sheet (Doc. # 58) and Order (Doc. # 61). The Court instructed defendant to file a memorandum in support of its fee request by August 25, 2000 and provided plaintiff until September 1, 2000 to file a response. See *id.* At the time, the Court advised plaintiff that she should only address the question whether the amount of fees was reasonable and that she should not re-visit the issue whether she had good cause for failure to meet her discovery obligations.

 On August 24, 2000, defendant filed a fee and expense statement which requested $781.75 for costs and expenses, including attorneys' fees, in preparing Defendants' Motion To Compel/Dismiss (Doc. # 35).[10] See Defendant's Fee And Expense Statement (Doc. # 62) filed August 24, 2000. Plaintiff does not challenge the amount of fees and expenses which defendant requests. To determine a reasonable attorneys' fee, the Court must arrive at a "lodestar" figure by multiplying the hours defense counsel reasonably spent on the motion by a reasonable

hourly rate. See *Jane L. v. Bangerter,* 61 F.3d 1505, 1509 (10th Cir.1995). The fee applicant bears the burden of establishing entitlement to an award and documenting the appropriate hours expended and hourly rates. See *Case v. Unified School Dist. No. 233,* 157 F.3d 1243, 1249–50 (10th Cir.1998) (citations omitted).

 Defendant claims that counsel spent a total of 5.9 hours to prepare the motion and requests an hourly fee of $125 per hour. The Court finds that the time expended and proposed hourly rate are reasonable. See *Aquilino v. University of Kan.,* 109 F.Supp.2d 1319, 1325 (D.Kan.2000) ($155 for lead counsel); *Outdoor Sys., Inc. v. City of Merriam, Kan.,* 2000 WL 575023, at *4–5 (D.Kan. Feb. 25, 2000) ($165 and $155 per hour for lead counsel, $120 per hour for co-counsel/associates); *Starlight Int'l, Inc. v. Herlihy,* 190 F.R.D. 587, at 592–93 (D.Kan. 1999) (prevailing rate in relevant community appears to be $155 per hour for lead counsel and $120 per hour for other attorneys). Thus the Court will award attorneys' fees in the amount of $737.50. Defendant also requests copying expenses in the amount of $44.25, which the Court also finds is reasonable. The Court will therefore award defendant a total of $781.75 for the reasonable expenses and fees incurred in preparing the motion.

### III. Defendant's Motion For Summary Judgment

Plaintiff does not oppose defendant's motion for summary judgment. Pursuant to Fed.R.Civ.P. 6(a) and (e) and D. Kan. 7.1(b), plaintiff had 23 days, or until September 25, 2000 to file a response. Plaintiff has failed to do so. Pursuant to D. Kan. 7.4, "[i]f a respondent fails to file a response within the time required by Rule 7.1(b), the motion will be considered and decided as an uncontested motion, and ordinarily will be granted without further notice." For this reason, and for good cause shown, the Court will sustain defendant's motion for summary judgment.

10. Defendant did not file a fee and expense statement for the preparation of Defendants' Motion To Compel (Doc. # 44). The Court therefore does not award fees and expenses for that motion.

## IV. Order To Show Cause And Defendant's Motion For Sanctions

■ On August 29, 2000, defendant filed a motion for sanctions because plaintiff did not provide a written response or documents responsive to its requests for documents, despite the Court's specific instruction at the pretrial conference that she do so by August 25, 2000. See Defendant's Motion For Sanctions (Doc. # 64) filed August 29, 2000.[11] Plaintiff has not responded to the motion. The Court therefore considers it as an uncontested motion pursuant to D. Kan. 7.4. For this reason, and for good cause shown,·the Court will sustain the motion.

Having carefully reviewed the matter, the Court finds that plaintiff failed to comply with the Court's order that she provide full and complete responses to defendant's document production requests by August 25, 2000. According to defense counsel's sworn affidavit testimony, counsel contacted plaintiff by telephone several times after the pretrial conference and offered to review the discovery responses and other outstanding matters with her. See Certificate And Affidavit Of Good Faith Efforts To Confer And Resolve Discovery Dispute ¶ 1, attached as Exhibit B to Memorandum In Support Of Defendants' Motion For Sanctions (Doc. # 65) filed August 29, 2000. On August 25, 2000, defense counsel noted the inadequacy of· plaintiff's discovery responses when plaintiff delivered them to his office. See *id.* ¶¶ 3, 4. He tried unsuccessfully to resolve the matter with plaintiff and requested that she contact the Court jointly with him to resolve the matter. See *id.* ¶ 4. Plaintiff refused to do so and immediately left his office. See *id.* To date, it appears that plaintiff has not provided written responses or documents responsive to defendant's requests, and she has provided no explanation for her failure to do so.

Defendant requests the Court to impose various sanctions, including dismissal, evidentiary limitations, staying the case, judgment and attorneys' fees. See Defendant's Motion For Sanctions(Doc. # 64) at 1–2. Except for attorneys' fees, defendant's requests for relief are moot in light of the Court's summary judgment ruling in favor of defendant.[12]

The Court has gone to great length to instruct plaintiff with respect to her discovery obligations and the importance of meeting court deadlines. The Court is particularly dismayed by plaintiff's refusal to contact the Court with defense counsel on August 25, 2000, the last date upon which the Court allowed plaintiff to respond completely to defendant's requests for document production. Defense counsel made a good faith effort to obtain these responses without court action, and plaintiff has not shown that her failure to respond was substantially justified or that other circumstances make an award of fees unjust. The Court therefore finds that pursuant to Rule 37(a)(4)(A), plaintiff should be ordered to pay defendant the reasonable expenses incurred in making this motion, including attorneys' fees.

**IT IS THEREFORE ORDERED** that the Motion For Appointment Of Counsel (Doc. # 50) which plaintiff filed August 3, 2000 be and hereby is **OVERRULED.**

**IT IS FURTHER ORDERED** that plaintiff shall pay defendant $781.75 for the reasonable expenses and attorneys' fees incurred in preparing Defendants' Motion To Compel/Dismiss (Doc. # 35).

**IT IS FURTHER ORDERED** that the Motion For Summary Judgment (Doc. # 68) which defendant filed August 31, 2000 be and hereby is **SUSTAINED.**

**IT IS FURTHER ORDERED** that Defendant's Motion For Sanctions (Doc. # 64) filed August 29, 2000 be and hereby is **SUSTAINED** in part and **OVERRULED** in part. Plaintiff shall pay defendant the reasonable expenses incurred in making the motion, including attorneys' fees. On or before December 15, 2000, defendant shall file a memorandum which outlines the fees and expenses which it reasonably incurred in obtaining this

---

11. Defendant also asserts that plaintiff fabricated a document which she contends represents two exhibits on her exhibit lists. See *id.* The Court is unable to make such a determination on the record at this time.

12. The Court notes that defendant's requests for relief were not moot at the time it filed the motion for sanctions.

order. If plaintiff wishes to respond, she shall do so no later than January 5, 2001. Defendant's remaining requests for relief are denied as moot.