Marie **AQUILINO**, Ph.D., Plaintiff,

v.

**UNIVERSITY OF KANSAS**, Defendant.

Civil Action No. 99–2231–KHV.

United States District Court,
D. Kansas.

July 31, 2000.

Alan V. Johnson, Stephen D. Lanterman, Sloan, Listrom, Eisenbarth, Sloan & Glassman, Topeka, KS, W. thomas Stratton, Topeka, KS, for Plaintiff.

Rose A. Marino, Barbara L. McCloud, Office of General Counsel, University of Kansas, Lawrence, KS, for Defendant.

### MEMORANDUM AND ORDER

VRATIL, District Judge.

Marie Aquilino filed suit against the University of Kansas, seeking relief under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* as amended. She alleged that because of her sex, the university refused to promote her to Associate Professor and to award tenure. She also alleged that because she had filed a sex discrimination charge with the Equal Employment Opportunity Commission, the university later refused to hire her as an ad hoc or adjunct faculty member. On February 11, 2000, the Court sustained defendant's motion for summary judgment on plaintiff's sex discrimination claim. *See Memorandum And Order* (Doc. #42) filed February 11, 2000. From April 4 through 11, 2000, plaintiff tried her retaliation claim to a jury which returned a $35,000.00 verdict in her favor. The matter is before the Court on *Plaintiff's Motion To Alter Or Amend Judgment* (Doc. #68) filed April 20, 2000 and *Plaintiff's Motion For An Award Of Statutory Fees And Expenses* (Doc. #70) filed April 25, 2000. For reasons set forth below, the Court overrules plaintiff's motion to alter or amend and sustains in part and overrules in part plaintiff's motion for fees and expenses.

### Factual Background

In August 1991, plaintiff started work at the University of Kansas ("KU") as a tenure track Assistant Professor in the Kress Foundation Department of Art History. In October 1997, the Department unanimously recommended against promotion and tenure for plaintiff and in favor of promotion and tenure for one male and another female candidate. As a result, the Department notified plaintiff that her employment would terminate at the end of the 1998-99 academic year.

In the spring of 1999, plaintiff applied for an adjunct research position with the Hall Center for the Humanities. Although the Hall Center supported plaintiff's appointment, the Provost rejected it because he thought that it would not serve "a University purpose" and that it would be "inappropriate." In May 1999, the Department denied plaintiff an appointment as ad hoc faculty member. In the summer of 1999, KU also denied plaintiff ad hoc ap-

pointments in the Department of Latin American Studies and the Department of History, despite the support of each department.

### Analysis

### I. Plaintiff's Motion To Alter Or Amend Judgment

Under Title VII, the Court may award a successful plaintiff any appropriate relief, including reinstatement, back pay, or any other equitable relief the Court deems appropriate. *See* 42 U.S.C. § 2000e-5(g). The Court has "considerable discretion in formulating remedies for Title VII violations." *Carter v. Sedgwick County*, 36 F.3d 952, 957 (10th Cir.1994). "[O]ne of the central purposes of Title VII is 'to make persons whole for injuries suffered on account of unlawful employment discrimination.'" *Franks v. Bowman Transp., Co., Inc.*, 424 U.S. 747, 763, 96 S.Ct. 1251, 47 L.Ed.2d 444 (1976) (quoting *Albemarle Paper Co. v. Moody*, 422 U.S. 405, 418, 95 S.Ct. 2362, 45 L.Ed.2d 280 (1975)). "A finding of a violation of Title VII presumptively entitles the victim of the discrimination to an award of employment, retroactive promotions and raises, and backpay including lost benefits. Plaintiff should be awarded retroactive employment, including promotions, raises, and benefits, unless other factors mitigate against such an award." *Sanchez v. Philip Morris Inc.*, 774 F.Supp. 626, 629 (W.D.Okla.1991) (citing *Franks, supra*).

■ Here, plaintiff requests appointment to an adjunct position with the Hall Center, front pay, and an injunction which bars KU from further acts of retaliation. Initially the Court finds that an injunction is inappropriate. Plaintiff asks the Court to enjoin KU from further retaliation such as negative statements to prospective employers. After a finding of unlawful discrimination or retaliation, the Court may enjoin defendant from further unlawful practices if "the moving party ... demonstrate[s] that there exists some cognizable danger of recurrent violations." *E.E.O.C. v. Wal–Mart Stores, Inc.*, 202 F.3d 281, 1999 WL 1244485, at *6 (10th Cir. Dec.21, 1999) (quoting *E.E.O.C. v. General Lines, Inc.*, 865 F.2d 1555, 1565 (10th Cir.1989)). Here, plaintiff has not shown any danger that KU will provide negative references to prospective employers or take other adverse action against plaintiff, in retaliation for her pursuit of discrimination and retaliation claims. Accordingly, the Court finds that injunctive relief is not warranted. *See id.* (absent evidence that practice is likely to recur, injunction based on single unlawful employment practice not appropriate); *see also Hayes v. Shalala*, 933 F.Supp. 21, 27 (D.D.C.1996) (court should not presume defendant will violate law in future).

■ To remedy the denial of her requests for various ad hoc appointments, plaintiff also requests appointment as an adjunct faculty member at the Hall Center and front pay. Preliminarily, however, the Court notes that plaintiff proceeds on the assumption, which is not necessarily correct, that she prevailed on every alternative theory which she presented at trial. Plaintiff alleged that KU retaliated against her by (1) removing her from a student dissertation review committee, (2) failing to select her for an adjunct position at the Hall Center; and (3) failing to select her for ad hoc positions in the Art History, History and Latin American Studies Departments. From the jury verdict in this case, the Court cannot discern whether the jury agreed that KU retaliated against plaintiff under each theory. Plaintiff did not request a special verdict. *See Transcript of Trial - Volume V* (Doc. #95) filed July 7, 2000 at 777. Accordingly, unless the Court speculates on which theory or theories the jury may have adopted, the Court cannot determine what equitable remedy might be appropriate. For example, if the jury based its verdict solely on plaintiff's removal from the student dissertation committee, an equitable remedy based on KU's failure to select her as an adjunct or ad hoc member would be inappropriate. Absent a special verdict, plaintiff's request for equitable relief is inherently flawed.

The Court nevertheless will evaluate the merits of plaintiff's requests for reinstatement and front pay.

Reinstatement and front pay are mutually exclusive remedies for the same injury. *James v. Sears, Roebuck & Co.*, 21 F.3d 989, 997 (10th Cir.1994) (ADEA) (citing *Anderson v. Phillips Petroleum Co.*, 861 F.2d 631, 637 (10th Cir.1988)); *Daneshvar v. Graphic Technology, Inc.*, 40 F. Supp.2d 1225, 1240 (D.Kan.1998). "Front pay refers to the award of money as compensation for the future loss of earnings." *James,* 21 F.3d at 997 (citation omitted). Reinstatement is the preferred remedy, however, and should be ordered whenever it is appropriate. *See id.* (citing *E.E.O.C. v. Prudential Federal Sav. & Loan Ass'n,* 763 F.2d 1166, 1172 (10th Cir.), *cert. denied,* 474 U.S. 946, 106 S.Ct. 312, 88 L.Ed.2d 289 (1985)); *Daneshvar,* 40 F. Supp.2d at 1241. The Court has discretion whether to award front pay or to order reinstatement as an appropriate remedy. *See James,* 21 F.3d at 997 (citation omitted).

### A. Reinstatement

Plaintiff asks the Court to appoint her as an adjunct faculty member at the Hall Center. At trial, plaintiff testified that because she lacked a university affiliation, her failure to obtain the adjunct position decreased the likelihood that she would receive grants. Plaintiff also testified that the adjunct position would have allowed her to pursue an alternative career track, *i.e.* she could have moved from an adjunct position at KU to an associate adjunct position at another university and then to associate and full professor positions.

█ The Court finds that appointment of plaintiff as an adjunct is not appropriate. First, plaintiff does not dispute that the adjunct position would have ended on June 30, 2000 and thus her request for instatement is moot. An appointment at this time would not provide plaintiff the *current* university affiliation which is the alleged key to her pursuit of an alternative

career track. Second, plaintiff's "alternative career track" theory is speculative and conclusory. Plaintiff initially requested the Hall Center position because she was unsure whether she needed a university affiliation in connection with an AAUW grant which she had received. Plaintiff later learned that she did not need the affiliation to receive the grant. From the time of her grant through the time of trial, plaintiff did not apply for any non-tenure track positions. This fact suggests that she is not (and never was) going to pursue this "alternative career track." Moreover, plaintiff apparently bases her theory on the faulty premise that the adjunct position was a "faculty" position. Instead, the Hall Center position was an adjunct research position. No evidence suggests that plaintiff could have pursued an "alternative career track" based on a research position. In sum, the Court overrules plaintiff's request for appointment as an adjunct faculty member or research associate at the Hall Center.

### B. Front Pay

█ The Court also must deny plaintiff's request for front pay, which is based on the fact that KU rejected plaintiff for three ad hoc positions. Front pay is an alternative remedy where reinstatement is inappropriate. *See James,* 21 F.3d at 997 (ADEA) (citing *Anderson,* 861 F.2d at 637). Accordingly, "any award of front pay is limited by the estimated [pay and] remaining tenure plaintiff would have enjoyed with [defendant] absent the discriminatory conduct." *Sandlin v. Corporate Interiors, Inc.,* 972 F.2d 1212, 1215 (10th Cir.1992) (ADEA); *see Dalal v. Alliant Techsystems, Inc.,* 72 F.3d 137, 1995 WL 747442, at *3 (10th Cir. Dec.18, 1995) (front pay must be based on what plaintiff would have earned as an employee of defendant after trial if he could have been reinstated.) (Title VII). In this case, because KU denied plaintiff short term, unpaid positions, no front pay award is appropriate. The amount of front pay at KU is zero. The Court rejects plaintiff's novel

theory that front pay includes lost future employment opportunities with other employers. As explained above, as an alternative to reinstatement, front pay reflects only the estimated amount of future benefits plaintiff would have received with defendant if she had been reinstated.

Even if the Court could award front pay based on lost opportunities with other employers, it would decline to do so in this case. Plaintiff's testimony regarding such lost opportunities was inconclusive and entirely speculative. For example, she testified that in her interview for a tenure track position with MIT in December 1999, she was concerned that MIT would not hire her because KU had denied tenure. She did not testify that she was concerned about MIT's reaction to the fact that KU had denied her ad hoc positions and removed her supervision of graduate students. Indeed, she testified that she did not tell MIT this information. The Court cannot award front pay for the denial of the ad hoc positions when plaintiff apparently did not inform any prospective employers of such information. Plaintiff was obviously most concerned that she would not get another tenure track position in art history based on the tenure denial, not the denial of three ad hoc positions (two of which were in other departments). No evidence suggests that the denial of the three ad hoc positions is material to her employment prospects in a tenure track position in art history at another institution.

## II. Plaintiff's Motion For Fees And Expenses

Defendant does not contest that plaintiff is a "prevailing party" under 28 U.S.C. § 1988. "[P]laintiffs may be considered 'prevailing parties' for attorneys' fees purposes if they succeed on any significant issue in litigation which achieves some of the benefit the parties sought in bringing suit." *Hensley v. Eckerhart*, 461 U.S. 424, 433, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983) (quoting *Nadeau v. Helgemoe*, 581 F.2d 275, 278–79 (1st Cir.1978)).

### A. Consultation

Defendant initially complains that plaintiff's counsel failed to properly consult with opposing counsel. The Court will not consider a motion to award statutory attorney fees until the moving party provides a statement of consultation which sets "forth the date of the consultation [with opposing counsel], the names of those who participated, and the specific results achieved." *See* D. Kan. Rule 54.2. Although plaintiff did not precisely comply with this requirement in her initial memorandum, she has set forth the required information in her reply brief. The Court is convinced that despite a good faith effort to comply, the parties are unable to reach an agreement with respect to the fee award.

### B. Calculation Of Lodestar

"To determine a reasonable attorneys fee, the district court must arrive at a 'lodestar' figure by multiplying the hours plaintiff's counsel reasonably spent on the litigation by a reasonable hourly rate." *Jane L. v. Bangerter*, 61 F.3d 1505, 1509 (10th Cir.1995). The "lodestar" figure is then subject to upward or downward adjustment. "[T]he fee applicant bears the burden of establishing entitlement to an award and documenting the appropriate hours expended and hourly rates." *Case v. Unified School Dist. No. 233*, 157 F.3d 1243, 1249-50 (10th Cir.1998) (citations omitted).

#### 1. *Reasonable Hourly Rates*

In setting the hourly rate, "the court should establish, from the information provided to it and from its own analysis of the level of performance and skills of each lawyer whose work is to be compensated, a billing rate for each lawyer based upon the norm for comparable private firm lawyers in the area in which the court sits calculated as of the time the court awards fees." *Ramos v. Lamm*, 713 F.2d 546, 555 (10th Cir.1983). A reasonable hourly rate comports with rates "prevailing in the commu-

nity for similar services for lawyers of reasonably competent skill, experience, and reputation." *Blum v. Stenson*, 465 U.S. 886, 896 n. 11, 104 S.Ct. 1541, 79 L.Ed.2d 891 (1984). A district judge may turn to her own knowledge of prevailing market rates as well as other indicia of a reasonable market rate. *Metz v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 39 F.3d 1482, 1493 (10th Cir.1994) (citation omitted).

Alan V. Johnson and Stephen D. Lanterman of the law firm Sloan, Listrom, Eisenbrath, Sloan & Glassman, L.L.C. represented plaintiff in this case. Mr. Johnson has practiced law for 20 years and has spent most of his time during the last ten years on civil rights cases. He has tried 12 civil rights cases (eight to a jury). Mr. Lanterman has practiced law for two years. He has spent approximately 50 percent of his time on civil rights cases. Plaintiff seeks the following hourly rates: Mr. Johnson - $155.00, Mr. Lanterman - $110.00, paralegals - $65.00, and law clerks - $25.00.

 To determine a reasonable rate, the Court focuses on the rates of lawyers of comparable skill and experience. *Ellis v. University of Kan. Med. Ctr.*, 163 F.3d 1186, 1204 (10th Cir.1998). After considering the skill, experience and reputation of counsel and the undersigned's own knowledge of the prevailing market rates, the Court finds that the hourly rates proposed by plaintiff are reasonable. *See Outdoor Systems, Inc. v. City of Merriam, Kan.*, 2000 WL 575023, at *4-5 (D.Kan. Feb.25, 2000) ($165 and $155 per hour for lead counsel, $120 per hour for co-counsel/associates, $70 per hour for paralegals and law clerks); *Starlight Intern., Inc. v. Herlihy*, 190 F.R.D. 587, 592–93 (D.Kan.1999) (prevailing rate in relevant community appears to be $155 per hour for lead counsel and $120 per hour for other attorneys); *Cadena v. Pacesetter Corp.*, No. 97—2659–KHV, 1999 WL 450891, at *5 (D.Kan. Apr.27, 1999) ($155 per hour for lead counsel with eight years relevant experience; $120 per hour for attorneys with six and seven years experience; $58 per hour for paralegal).

### 2. *Reasonable Hours*

The Court next determines the number of hours counsel for plaintiff reasonably expended on the litigation. *Case*, 157 F.3d at 1249. "[T]he burden is on the prevailing party to show that the hours claimed are reasonable." *Deters v. Equifax Credit Information Services, Inc.*, No. 96–2212–JWL, 1998 WL 12119, at *3 (D.Kan. Jan.6, 1998) (quoting *Blum v. Stenson*, 465 U.S. 886, 897, 104 S.Ct. 1541, 79 L.Ed.2d 891 (1984)). Attorneys normally do not bill all hours expended in litigation to a client, and "an applicant should exercise 'billing judgment' with respect to a claim of the number of hours worked." *Ellis*, 163 F.3d at 1202 (quoting *Malloy v. Monahan*, 73 F.3d 1012, 1018 (10th Cir.1996)). To show billing judgment, "[c]ounsel for the prevailing party should make a good-faith effort to exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary ... [and the] district court has a corresponding obligation to exclude hours not 'reasonably expended' from the calculation." *Ellis*, 163 F.3d at 1202 (quoting *Malloy*, 73 F.3d at 1018).

Plaintiff claims that the following hours were reasonably expended:

| Attorney | June 1998 - Jan. 1999 | Apr. 1999 - Feb. 11, 2000 | Feb. 11, 2000 - June, 2000 | Total Hrs. Requested |
|---|---|---|---|---|
| Johnson | 22.2 | 113.0 | 232.8 | 368.0 |
| Lanterman | 0.0 | 285.8 | 198.3 | 484.1 |
| Paralegal | 0.4 | 41.4 | 38.2 | 79.6 |
| Law Clerk | 0.0 | 3.8 | 5.9 | 9.7 |

■ Defendant first argues that plaintiff's counsel should not be compensated for background research familiarizing themselves with general areas of the law. Defendant specifically objects to counsel's research regrading "retaliation," "adverse action," equitable relief, attorneys' fees and court rules. Counsel's research on retaliation and adverse employment action was necessary and reasonable in light of defendant's arguments on the issues. On the other hand, the Court finds that research regarding attorneys' fees, equitable relief and court rules is more properly attributed to general firm overhead. *See Gudenkauf v. Stauffer Communications, Inc.*, 953 F.Supp. 1237, 1243 (D.Kan.1997) ("Hours spent reading background cases or familiarizing oneself with the general area of law should be absorbed in the firm's overhead and not be billed to the client."), *aff'd*, 158 F.3d 1074 (10th Cir. 1998). Accordingly, the Court deducts such time (Johnson - 8.4 hours, Lanterman - .8 hours, law clerk - 3.5 hours).[1]

■ Defendant next claims that plaintiff's counsel unnecessarily filed a motion in limine on an issue that defendant did not intend to raise at trial. Although it would have been preferable for plaintiff's counsel to consult with opposing counsel before filing the motion, such consultation is not required. Moreover, the Court cannot say that the motion was unnecessary because defense counsel had asked about the particular topic in plaintiff's deposition and counsel therefore reasonably believed that defendant might raise the issue at trial.

■ Defendant argues that many of the submitted hours are duplicative because plaintiff chose to be represented by two attorneys at various depositions, at the two settlement conferences, and during jury deliberations. With respect to the decision to send two attorneys to the settlement conferences, the Court agrees. Plaintiff has not shown that Mr. Johnson could not adequately represent her at each settlement conference. Accordingly, the Court deducts from Mr. Lanterman's time 5.8 hours on January 26, 2000 and 3.0 hours on March 21, 2000. With respect to the depositions of plaintiff and Dr. Linda Stone-Ferrier and the period of jury deliberations, the Court finds that plaintiff's decision to employ two attorneys was reasonable. Both attorneys were extensively involved in the case and their appearance at key depositions was reasonable. Because both attorneys had participated in the trial, their joint presence during jury deliberations was also reasonable. Defendant also had two attorneys present during trial.

■ Defendant next objects to counsel's travel time between Topeka and Kansas City. In particular, defendant claims that it should not have to reimburse plaintiff for travel time when plaintiff chose to file her case in Kansas City rather than Topeka. The Court will not question plaintiff's initial choice of forum. On the other hand, travel time should not be compensated at the full hourly rate because such time is inherently unproductive. Although some attorneys customarily charge for such time at their full hourly rate, the Court believes that the most reasonable approach is to allow counsel to recover 50 per cent of travel time. *See Smith v. Freeman*, 921 F.2d 1120, 1121-22 (10th Cir. 1990) (affirming award of 25% of standard hourly rate for travel time). Accordingly, the Court will deduct one hour from the time entries of Mr. Johnson and Mr. Lanterman on March 21 and April 4, 5, 6, 7, 10 and 11.

Defendant also objects to time counsel spent for public relations and a call from a potential client. This time will be excluded

---

**1.** Where counsel included such research as part of a block billing, the Court has deducted one half of counsel's time.

because plaintiff has not shown that it contributed to her case. *See Outdoor Sys., Inc. v. City of Mesa,* 997 F.2d 604, 619 (9th Cir.1993). The call from a potential client was part of a block billing of 7.3 hours and the Court will deduct one hour for the call. The call regarding public relations was part of a block billing of .8 hours and the Court will deduct .4 hours for the call.

■ Defendant objects to time expended on plaintiff's sex discrimination claim, on which the Court entered summary judgment. Plaintiff contends that the sex discrimination and retaliation claims shared a "common core of facts." The Court disagrees. Prior to the Court's summary judgment ruling on February 11, 2000, both parties focused nearly all of their attention on plaintiff's sex discrimination claim. *See Transcript of Trial - Volume III* (Doc. #93) filed July 7, 2000 at 638-40 (comments of Mr. Johnson). For example, in plaintiff's summary judgment opposition brief, counsel spent over nine pages of argument and 77 statements of fact discussing plaintiff's sex discrimination claim. In comparison, plaintiff devoted less than two pages of argument and nine statements of fact to her retaliation claim. Moreover, plaintiff filed her lawsuit before most of the events underlying her retaliation claim had even occurred. Finally, plaintiff's claim for damages on the two claims did not overlap to a significant degree. *See Pretrial Order* (Doc. #22) filed December 3, 1999 at 6-7. For these reasons, the Court will not award counsel any fees for the time they spent on the case between June 1998 and January 1999. The first alleged retaliatory act did not occur until December 1998 and counsel did not spend any time on that issue until April 1999. The Court also will award counsel only 40 per cent of their time (after any other deductions noted above) from April 1999 through February 11, 2000. *See Hensley,* 461 U.S. at 435, 103 S.Ct. 1933 (work on a distinct unsuccessful claim is not compensable because it is not "expended in pursuit of the ultimate result achieved").

Defendant also claims that the hours expended by counsel generally were excessive. The Court disagrees. The Court finds that the hours expended by counsel on plaintiff's retaliation claim were reasonable and necessary. *See Ellis,* 163 F.3d at 1202.

### 3. *Lodestar*

After the above adjustments and using the above rates, the Court calculates the lodestar as follows:

| Attorney | Hrs: 6/98 - 11/99 | Hrs: 4/99 - 2/11/00 | Hrs: 2/11/00 - 6/00 | Total Hrs. Awarded | Hourly Rate | Total Fee |
|---|---|---|---|---|---|---|
| Johnson | 0.0 | 45.2 | 217.4 | 262.6 | $155 | $40,703.00 |
| Lanterman | 0.0 | 111.6 | 187.1 | 298.7 | $110 | $32,857.00 |
| Paralegal | 0.0 | 16.6 | 38.2 | 54.8 | $ 65 | $ 3,562.00 |
| Law Clerk | 0.0 | 1.5 | 2.4 | 3.9 | $ 25 | $ 97.50 |
| | | | | | | $77,219.50 |

### 4. *Adjustment Of Lodestar*

Defendant asks the Court to adjust the lodestar downward because plaintiff prevailed on only her retaliation claim. Given that the Court reduced by 60 per cent counsel's time prior to the Court's summary judgment ruling, no further lodestar adjustment is warranted.

### C. **Expenses**

■ In addition to attorneys' fees, the prevailing party is entitled to recover reasonable expenses that are usually itemized and billed separately, as long as the expenses are reasonable. *See Sussman v. Patterson,* 108 F.3d 1206, 1213 (10th Cir. 1997). As an initial matter, plaintiff seeks

$300.67 for copies, $150.00 for filing fees, and $7,120.00 for deposition costs. These expenses are considered "costs" which are taxed by the clerk against the losing party. *See* 28 U.S.C. § 1920. Pursuant to Rule 54(d)(1), costs other than attorneys' fees are allowed as a matter of course to the prevailing party unless the Court directs otherwise. D. Kan. Rule 54.1(a) provides that the party entitled to recover costs shall file a bill of costs with the clerk within 30 days after the time for appeal has expired or receipt by the clerk of an order terminating the action on appeal. The instant action currently is on appeal and plaintiff has not yet filed its bill of costs with the clerk. If plaintiff prevails on appeal, it may file a bill of costs with the clerk for its copying, filing fee and deposition costs.

Plaintiff also seeks to recover $873.17 for travel, $79.46 for computer research, $22.20 for local counsel fees, and $2.55 for long distance calls. Defendant objects to an award of all expenses because a significant portion of those expenses were related to plaintiff's discrimination claim, not her successful retaliation claim.[2] The Court agrees to a limited extent. Consistent with the above rulings on fees, the Court will not award plaintiff any expenses through January 1999. Thus, the Court will exclude $36.45 for travel. The majority of the remaining travel expenses, however, as well as the computer research expenses, were incurred after the Court sustained defendant's motion for summary judgment on plaintiff's discrimination claim. In addition, the travel expenses associated with the depositions which counsel took prior to the summary judgment ruling would likely have been the same absent plaintiff's discrimination claim. Accordingly, the Court will award plaintiff expenses in the amount of $940.93 ($836.72 for travel, $79.46 for computer research, $22.20 for local counsel fees, and $2.55 for long distance calls).

**IT IS THEREFORE ORDERED** that *Plaintiff's Motion To Alter Or Amend Judgment* (Doc. #68) filed April 20, 2000 be and hereby is **OVERRULED.**

**IT IS FURTHER ORDERED** that *Plaintiff's Motion For An Award Of Statutory Fees And Expenses* (Doc. #70) filed April 25, 2000 be and hereby is **SUSTAINED in part** and **OVERRULED in part.** The Court awards plaintiff $77,219.50 in attorneys fees and $940.93 in expenses.

---

2. Defendant primarily objects to the deposition expenses incurred by counsel. It may raise that objection when plaintiff asks the clerk to tax costs.